COLUMBUS BAR ASSOCIATION *v.* MCCORKLE.

[Cite as *Columbus Bar Assn. v. McCorkle,*
105 Ohio St.3d 430, 2005-Ohio-2588.]

(No. 2004–1822—Submitted January 19, 2005—Decided June 8, 2005.)

**Per Curiam.**

{¶ 1} Respondent, James McCorkle, formerly of Plain City, Ohio, Attorney Registration No. 0019801, was admitted to the practice of law in Ohio in 1976. On April 14, 2003, relator, Columbus Bar Association, charged respondent with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' stipulations, and made findings of misconduct and a recommendation, all of which the board adopted.

### Misconduct

{¶ 2} Respondent has not been registered as an attorney under Gov.Bar R. VI since September 1, 2003, and he no longer maintains an office at the registration address on file with the Attorney Registration Section of the Supreme Court of Ohio or lives at his last known residence. Divorced in 2003, respondent now stays in motels or with friends, some of whom he knows through Alcoholics Anonymous.

{¶ 3} Respondent was a sole practitioner, sharing office space with several other lawyers and maintaining a high-volume personal-injury practice. In August 2002, however, respondent stopped working at his law office during business hours, coming by at night. He stopped communicating with his secretary and clients, attending scheduled court dates, and meeting statutes of limitations and other deadlines. He stopped responding to business mail, e-mail, and voice mail. Respondent also failed to maintain contact with courts in which clients' cases were pending or to properly withdraw from cases that he was unwilling or unable to manage. He further failed to conscientiously account for funds in his client trust account, to remit clients' funds and files on request, and to otherwise protect his clients' legal interests.

{¶ 4} Richard D. Topper, an attorney with whom respondent shared office space, became concerned that respondent had abandoned his practice, and as required by DR 1–103(A), he reported the problem to relator.

{¶ 5} With respondent's permission and relator's approval, Topper contacted over 100 of respondent's clients, assuring them that their interests would be protected despite respondent's unavailability. Topper and another attorney in their office suite then arranged for the clients' files to be redistributed, with the clients' consent, to lawyers willing and able to handle the responsibility.

{¶ 6} By the end of 2002, the two attorneys managing respondent's caseload had satisfactorily handled some situations requiring prompt legal action to settle

or save the claim. In an earlier personal-injury case, however, respondent had allowed a statute of limitations to run on a claim that he was actively attempting to settle on his client's behalf. That client, Patricia Marachi, ultimately sued respondent in a malpractice action and secured a default judgment against him.

{¶ 7} In overseeing respondent's practice, Topper also discovered that respondent had been appropriating client funds for his own use as well as advancing to clients funds that he was supposed to be holding in trust for other clients. The trust account from which these funds were drawn was largely a depository for sums received in settlement from insurance companies. By the time of Topper's discovery, respondent had depleted the entire account, over $50,000.

{¶ 8} Respondent has since replenished his trust account from money received in legal fees and inheritance, and all funds have now been distributed to the clients entitled to the money. Topper testified that none of these clients, with the exception of the client who sued for malpractice, have been prejudiced financially by respondent's withdrawals or his neglect.

{¶ 9} Respondent stipulated to the misconduct found by the board relative to the abandonment of his practice. The board found that respondent had violated DR 1–102(A)(5) (prohibiting conduct prejudicial to administration of justice) and (6) (prohibiting conduct adversely reflecting on fitness to practice law); 2–110(A)(1) (prohibiting the withdrawal from representation without a tribunal's required permission) and (2) (prohibiting withdrawal from representation without taking steps to avoid prejudice to a client); 6–101(A)(3) (prohibiting neglect of an entrusted legal matter); and 9–102(B)(3) (the board cited section (B)(1) but obviously intended (B)(3)) (requiring a lawyer to maintain records of funds and property of clients and render appropriate accounts) and (4) (requiring a lawyer to remit funds to which a client is entitled).

{¶ 10} Respondent also stipulated to violations of DR 1–102(A)(5) and (6) and Gov.Bar R.V(4)(G), conceding that he had failed to cooperate in the investigation of his misconduct. The board thus also found this misconduct.

## Sanction

{¶ 11} In recommending a sanction, the board considered the aggravating and mitigating features of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Finding from a medical report and his testimony that respondent suffers from alcoholism and depression, the board weighed the mitigating effect of these factors under BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). These regulations recognize alcohol dependence and mental disability as mitigating when (1) a lawyer has been professionally diagnosed as alcohol-dependent or as having a mental disability, (2) the dependency or disability contributed to the misconduct, (3) the lawyer has

successfully completed a dependency treatment program or has a sustained period of successful treatment for the disability, and (4) the lawyer is able, according to professional prognosis, to return to the competent, ethical, and professional practice of law notwithstanding these conditions.

{¶ 12} The board found that respondent's depression and alcoholism compromised his professional competence during the underlying events. According to a psychologist's evaluation conducted in January 2004, respondent was an alcoholic and had experienced a severe major depressive disorder. Although he had no psychotic symptoms that impaired his cognitive capacity, the condition grossly impaired his professional judgment. At the time of his examination, the psychologist reported that respondent was significantly at risk of relapse. In fact, the psychologist concluded that respondent was not then a candidate for the treatment program that recovery from his diseases required.

{¶ 13} At the panel hearing, respondent, who has no record of prior discipline in 26 years of practice, testified that he had been seeing a psychiatrist monthly since December 2002. He had also entered several rehabilitation programs since September 2000 but had not been being able to sustain recovery. Respondent now attends Alcoholics Anonymous meetings and takes the antialcoholism prescription drug Antabuse, along with other medication for his depression. Respondent testified that he has been sober since spring 2003.

{¶ 14} The board did not find respondent's disability and dependence mitigating because no expert prognosis established his ability to return to the competent and ethical practice of law. The board found that although respondent had admitted appropriating clients' money from his trust account for his own use, he had promptly replenished the money and paid his clients within months after realizing the arrearages. Thus, the board also found mitigating that respondent had made timely efforts to rectify the consequences of his misconduct. BCGD Proc.Reg. 10(B)(2)(c). Finally, the board found mitigating respondent's remorse, his willingness to address his psychological and substance-abuse problems, and his reputation for competence and good character prior to engaging in his misconduct. BCGD Proc.Reg. 10(B)(2)(e).

{¶ 15} In aggravation, the board considered that respondent, who has apparently not taken on a new client since August 2002, had failed to update his attorney registration records or take required continuing legal education courses. The board also found that respondent had not cooperated in relator's investigation and that he had demonstrated a pattern of misconduct and had committed multiple offenses. BCGD Proc.Reg. 10(B)(1)(c), (d), and (e). The board also considered the harm caused by respondent's malpractice, for which he had not yet compensated his client. The board further accepted respondent's representation that he owed interest to former clients, the Clarks, relative to a $25,000 sum that he withdrew from his trust account.

{¶ 16} Relator recommended an indefinite suspension, with any reinstatement to be subject to conditions designed to ensure respondent's sustained recovery. Respondent agreed to this sanction. The board recommended, consistent with the panel's report, that respondent be suspended indefinitely for his misconduct and that any application he files for reinstatement, in addition to the requirements of Gov.Bar R. V(10), include proof of his compliance with the following three conditions. First, the application for reinstatement must show that respondent entered a contract with the Ohio Lawyers Assistance Program and that he has successfully fulfilled all terms of that contract, including but not limited to maintaining complete sobriety. Second, the application must show that respondent obtained adequate and appropriate mental health treatment during the suspension period and that either the examining psychologist in this case or a psychiatrist of his choice has found him able to competently and ethically resume his law practice. Finally, the application must show that he has made full restitution to Marachi for his malpractice, and he must pay the Clarks for owed interest.[1]

{¶ 17} The parties do not object to the board's findings or recommendation. We thus find that respondent violated DR 1–102(A)(5) and (6), 2–110(A)(1) and (2), 6–101(A)(3), 9–102(B)(3) and (4), and Gov.Bar R. V(4)(G) as found by the board. We also agree that an indefinite suspension, with supplemental conditions for reinstatement, is appropriate.

{¶ 18} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. Upon any application for his reinstatement to the bar, respondent shall show, in addition to Gov.Bar R. V(10) requirements, that (1) he entered a contract with the Ohio Lawyers Assistance Program and has successfully fulfilled all terms of that contract, including but not limited to maintaining complete sobriety, (2) he obtained adequate and appropriate mental health treatment during the suspension period and either the examining psychologist in this case or a psychiatrist of his choice has found him able to competently and ethically resume his law practice, and (3) he has made full restitution to Marachi for his malpractice and has paid the Clarks the interest owed. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

1. A board condition suggesting that respondent should help another client negotiate with medical providers, "if appropriate and necessary," has been omitted. The board found no misconduct in respondent's representation of this client, and the condition was completely optional.

Bruce A. Campbell, Bar Counsel, Jill M. Snitcher McQuain, Assistant Bar Counsel, Mary Jo Cusak, and Kathleen McManus Trafford, for relator.

James McCorkle, pro se.