DISCIPLINARY COUNSEL *v.* RIDENBAUGH.

[Cite as *Disciplinary Counsel v. Ridenbaugh,*

122 Ohio St.3d 583, 2009-Ohio-4091.]

*Attorneys at law — Misconduct — Multiple disciplinary violations — Indefinite suspension with credit for time served on interim suspension.*

(No. 2008-2493 — Submitted April 8, 2009 — Decided August 20, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-025.

————————————

**Per Curiam.**

{¶ 1} Respondent, Aaron Anthony Ridenbaugh of Cuyahoga Falls, Ohio, Attorney Registration No. 0076823, was admitted to the practice of law in Ohio in 2003. On February 7, 2008, we suspended respondent's license to practice on an interim basis pursuant to Gov.Bar R. V(5)(A)(4), upon receiving notice of his felony conviction. See *In re Ridenbaugh*, 116 Ohio St.3d 1511, 2008-Ohio-441, 880 N.E.2d 486.

{¶ 2} The Board of Commissioners on Grievances and Discipline now recommends that we indefinitely suspend respondent's license to practice. The recommendation is based on the board's findings that respondent's acts of voyeurism and use of child pornography, which led to his felony convictions, breached ethical standards incumbent on lawyers in this state. We accept the board's findings that respondent engaged in professional misconduct and the recommendation for an indefinite suspension; however, we also grant respondent credit for the time his license has been under interim suspension.

{¶ 3} Relator, Disciplinary Counsel, charged respondent with violations of the former Code of Professional Responsibility and the current Rules of

Professional Conduct.[1]  A panel of three board members heard the case, including the parties' stipulations to charged misconduct, and recommended that this court suspend respondent from practice for two years, order him to comply with various restrictions during that time, and deny his request for credit for the interim suspension of his license.  The board adopted the panel's findings of misconduct but recommended an indefinite suspension under the suggested restrictions and without credit for the interim suspension.

{¶ 4}  Respondent objects to the board's recommendation, arguing that the board had no justification for augmenting the sanction recommended by the panel and that an indefinite suspension is too severe.  Respondent asks that we (1) impose a two-year suspension with a stay of the last year on conditions resembling those recommended and (2) grant credit for the time served on the interim suspension to offset any suspension period we impose.  For the reasons expressed below, we overrule the objections to the indefinite suspension, but sustain the objection to the denial of interim-suspension credit.

**Misconduct**

{¶ 5}  Respondent began engaging in the activities that would lead to his arrest sometime in late 2004, when while walking around his apartment complex he discovered that he could sometimes hear people inside an apartment having sexual relations.  He started placing a recording device inconspicuously outside apartment windows so that he could record residents' sexual activity and later listen to the recording for sexual gratification.  Respondent continued to make these secret recordings until May 21, 2007, when a resident spied him placing a

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility.  Although both the former and current rules are cited for the same acts, the allegations comprise a single ethical violation.  *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

recording device outside a bedroom window. Law enforcement apprehended respondent later the same day, and he confessed to surreptitious recordings.

{¶ 6} A search of respondent's apartment revealed other evidence of illicit conduct — possession of child pornography. Police discovered three videos and hundreds of photos and digital images showing minors in various stages of nudity. Respondent later revealed that he began obtaining child pornography near the end of 2006. Officers also found that respondent had made a peephole allowing him to view the female resident in an adjoining apartment.

{¶ 7} Respondent was indicted on three counts of intercepting wire, oral, or electronic communications in violation of R.C. 2933.32(A)(1), a felony of the fourth degree, and four counts of voyeurism in violation of R.C. 2907.08(A), a misdemeanor of the third degree, for acts occurring on April 21, 2005, September 27, 2006, and May 21, 2007. He eventually pleaded guilty to a bill of information charging him with three counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5), a felony of the fourth degree, and one count of the illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3), a felony of the fifth degree, for acts occurring on November 9, 2006.

{¶ 8} After a presentence investigation, respondent was sentenced on November 21, 2007, to a 48-month prison term. He was granted early judicial release in mid-January 2008, after serving only 56 days. He was then placed on community control for a period of five years, ordered into therapy, and ordered to comply with a series of probationary restrictions, among them completion of 300 hours of community service.

{¶ 9} Respondent has admitted violations of DR 1-102(A)(3), prohibiting a lawyer from engaging in illegal conduct involving moral turpitude, and Prof.Cond.R. 8.4(b), prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness. He also admits

violations of DR 1-102(A)(6) and Prof.Cond.R. 8.4(h), both prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law. We accept these stipulations and find the requisite clear and convincing evidence that respondent committed this professional misconduct.

**Sanction**

{¶ 10} In determining the appropriate sanction to impose for attorney misconduct, "we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 44. We then weigh the aggravating and mitigating factors to decide whether circumstances warrant a more lenient or a harsher disposition. See BCGD Proc.Reg. 10(B). Because each disciplinary case involves unique facts and circumstances, we are not limited to the factors specified in the rule and may take into account all relevant factors in determining which sanction to impose. BCGD Proc.Reg. 10(A) and (B).

{¶ 11} Respondent has conceded that he violated the duties to the public and legal profession set forth in DR 1-102(A)(3), Prof.Cond.R. 8.4(b), DR 1-102(A)(6), and Prof.Cond.R. 8.4(h). As to the harm posed by this misconduct, the board concluded:

{¶ 12} "The offenses committed by Respondent were despicable acts. In the case of the voyeurism Respondent's fetishes led him to intrude into the most intimate aspects of the lives of unsuspecting individuals, many of whom felt compelled to relocate after Respondent's activity was unveiled. And in the case of the child pornography, Respondent's viewing of minors for sexual gratification provides direct financial and other support for an insidious subculture that victimizes the most defenseless of our society."

**{¶ 13}** In cases where lawyers commit sex crimes targeting children or other especially vulnerable victims, we have imposed a sanction to at once "protect the public, deter other lawyers from similar wrongdoing, and preserve the public's trust in the legal profession." *Disciplinary Counsel v. Goldblatt*, 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091, ¶ 30. Thus, in *Goldblatt*, we indefinitely suspended a lawyer's license to practice following his two felony convictions for attempting to engage in sexual conduct with an underage victim. Accord *Disciplinary Counsel v. Pansiera* (1997), 77 Ohio St.3d 436, 674 N.E.2d 1373 (sexual conduct with minor). And in *Columbus Bar Assn. v. Linnen*, 111 Ohio St.3d 507, 2006-Ohio-5480, 857 N.E.2d 539, we indefinitely suspended a lawyer from practice following his misdemeanor convictions for indecently exposing himself to at least 30 different women and photographing their reactions. In so doing, we ensured that the lawyers could not return to the practice of law for at least two years as required by Gov.Bar R. V(10)(B) or without requalifying to practice through the rigorous process for reinstatement set forth in the rest of Gov.Bar R. V(10).[2]

---

2. **{¶ a}** Gov.Bar R. V(10)(C) and (D) establish the following requirements for the petition for reinstatement:

**{¶ b}** "(C) Contents of Petition for Reinstatement**.** Except as provided in division (B) of this section, a person who has been suspended from the practice of law for an indefinite period and who wishes to be reinstated may file a verified petition and twenty copies of the petition with the Clerk of the Supreme Court. The petition shall include all of the following:

**{¶ c}** "(1) The date on which the suspension was ordered and, if there was a reported opinion, the volume and page of the *Ohio Official Reports* where the opinion appears;

**{¶ d}** "(2) The dates on which all prior petitions for reinstatement were filed and denied or granted;

**{¶ e}** "(3) The names of all persons and organizations, except the petitioner and the Board, who were or would be entitled under this rule to receive from the Clerk of the Supreme Court certified copies of the disciplinary order of the Supreme Court against petitioner resulting in his or her suspension, the name of the bar association of the county or counties in which he or she resides at the time of the filing of the petition and of each county in which he or she proposes to maintain an office if reinstated, and the Ohio State Bar Association;

**{¶ f}** "(4) A statement that the petitioner has complied with the continuing legal education requirements of Gov. Bar R. X, Section 3(G);

**{¶ g}** "(5) The facts upon which the petitioner relies to establish by clear and convincing evidence that he or she possesses all the mental, educational, and moral qualifications that were

**{¶ 14}** An indefinite suspension from practice is thus an appropriate disposition in this case. Respondent argues, however, that (1) he should receive credit for time served on his interim suspension and (2) mitigating factors outweigh aggravating factors and support a suspension of two years with one year conditionally stayed, allowing him to forgo the petition-for-reinstatement process. In mitigation, the board found:

**{¶ 15}** "Although only a young lawyer having practiced less than five years before his interim suspension, Respondent does in fact have no disciplinary record." See BCGD Proc.Reg. 10(B)(2)(a).

---

required of an applicant for admission to the practice of law in Ohio at the time of his or her original admission and that he or she is now a proper person to be readmitted to the practice of law in Ohio, notwithstanding the previous disciplinary action.

**{¶ h}** "(D) Costs to be Deposited with Petition for Reinstatement**. A petition for reinstatement shall be accompanied by a deposit, in an amount fixed by the Clerk, for probable costs and expenses to be incurred in connection with the proceedings. The costs shall include any amounts unpaid under any prior order of the Supreme Court and any amounts owed to the Clients' Security Fund of Ohio for reimbursement of an award made pursuant to Gov. Bar R. VIII as the result of petitioner's misconduct."

**{¶ i}** The lawyer must then prove at a hearing the Gov.Bar R. V(10)(E) requisites for reinstatement:

**{¶ j}** "(E) Requisites for Reinstatement**. The petitioner shall not be reinstated unless he or she establishes all of the following by clear and convincing evidence to the satisfaction of the panel hearing the petition for reinstatement:

**{¶ k}** "(1) That the petitioner has made appropriate restitution to the persons who were harmed by his or her misconduct;

**{¶ l}** "(2) That the petitioner possesses all of the mental, educational, and moral qualifications that were required of an applicant for admission to the practice of law in Ohio at the time of his or her original admission;

**{¶ m}** "(3) That the petitioner has complied with the continuing legal education requirements of Gov. Bar R. X, Section 3(G);

**{¶ n}** "(4) That the petitioner is now a proper person to be readmitted to the practice of law in Ohio, notwithstanding the previous disciplinary action.

**{¶ o}** "The order of reinstatement may be subject to conditions the Supreme Court considers appropriate including, but not limited to, requiring the petitioner to serve a period of probation on conditions the Supreme Court determines and requiring the petitioner to subsequently take and pass a regular bar examination of the Supreme Court and take the oath of office."

{¶ 16} "Respondent has fully cooperated not only in the disciplinary process, but also the judicial process as well." See BCGD Proc.Reg. 10(B)(2)(d).

{¶ 17} "Respondent has made every attempt to rectify his misconduct by seeking and continuing treatment for the psychological and psychiatric disorders discussed below." See BCGD Proc.Reg. 10(B)(2)(c).

{¶ 18} "There have unquestionably been other, significant sanctions that have been imposed on Respondent, many of which will continue for years, if not a lifetime." See BCGD Proc.Reg. 10(B)(2)(f).

{¶ 19} As aggravating features, the board found:

{¶ 20} "There was clearly a selfish motive behind Respondent's conduct. He succumbed to his sexual fetishes without regard to the privacy and well being of his victims." See BCGD Proc.Reg. 10(B)(1)(b).

{¶ 21} "Respondent's conduct involved multiple offenses that took place over a period of years." See BCGD Proc.Reg. 10(B)(1)(d).

{¶ 22} "Respondent's conduct was directed at vulnerable victims, particularly with respect to his viewing child pornographic material." See BCGD Proc.Reg. 10(B)(1)(h).

{¶ 23} Respondent claims that the board failed to adequately acknowledge his remorse and mental disability in its deliberations. As to the first factor, it is true that the board did not specify respondent's contrition as mitigating. We, however, have no difficulty accepting that respondent deeply regrets his misconduct and the devastating effects it has had on his family, friends, colleagues, and especially his victims.

{¶ 24} In contrast, we find that respondent is unable, for now, to completely satisfy the test in BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv) for attributing significant mitigating effect to his mental disability. For a mental disability to qualify as a mitigating factor under the rule, the record must contain evidence of the following:

**{¶ 25}** "(i) A diagnosis of a * * * mental disability by a qualified health care professional * * *;

**{¶ 26}** "(ii) A determination that the * * * mental disability contributed to cause the misconduct;

**{¶ 27}** "(iii) In the event of * * * mental disability, a sustained period of successful treatment; and

**{¶ 28}** "(iv) A prognosis from a qualified health care professional * * * that the attorney will be able to return to competent, ethical professional practice under specified conditions."

**{¶ 29}** Respondent established the first three elements of this test. Respondent's psychiatrist, Stephen B. Levine, M.D., is an expert in clinical sexuality, including paraphilia, a condition generated by "the clash between individual sexual interest and social rules governing sexual behavior." *Goldblatt*, 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091, ¶ 22. When he came under Dr. Levine's care in mid-June 2007, respondent had just been hospitalized as suicidal following his arrest. Dr. Levine testified to his four-pronged diagnosis of respondent's mental disabilities: (1) dysthymia — a chronic low-grade depression from which respondent has suffered since childhood, (2) chronic substance abuse, mainly of marijuana, (3) paraphilia, manifested by voyeuristic and pedophiliac activity, with mixed character disorder marked by a passive, socially avoidant personality, and (4) attention deficit disorder ("ADD"), the most treatable of respondent's disabilities.

**{¶ 30}** Dr. Levine's testimony also unquestionably established that respondent's mental disabilities contributed to his ethical breaches. He explained how respondent's depression and sense of hopelessness traced back to his upbringing, which included abandonment in childhood by his biological father, his mother's contemporaneous cancer diagnosis, and a few years later, his abrupt and painful separation from his stepfather, to whom respondent had grown close,

due to the stepfather's conviction of possession of child pornography. Overwhelmed with low self-esteem and increasingly unable to achieve sexual satisfaction, respondent fixated on "coming of age" sexuality and sex acts between pubescent minors. According to Dr. Levine, respondent suffers from a lack of normal sexual development and as a result engaged in self-destructive behavior, including substance abuse, voyeurism, and extensive viewing of pornography.

{¶ 31} But with psychotherapy and medication, respondent has made strides toward managing his deviant and other unhealthy propensities. Before his incarceration in November 2007, respondent had attended weekly sessions with Dr. Levine; after prison, they met every two weeks until approximately June 2008. At that time, because he had made "reasonably" good progress but also due to his financial constraints, respondent had cut back on his appointments with Dr. Levine to just one every three and one-half weeks. He is compliant with prescribed medication, which has included Zoloft, an antidepressant, and Strattera for his ADD. Dr. Levine testified and respondent confirmed that since entering therapy, respondent has not engaged in illegal sexual activity, and random drug testing has shown that he has ceased all substance abuse.

{¶ 32} Megan Robertson, a social worker for the Ohio Lawyers Assistance Program ("OLAP"), also recounted how respondent had completed a sustained period of successful treatment. She testified that respondent had completely complied with his OLAP contract and had demonstrated commitment to fulfilling the requirements of community service, sex-offender therapy, drug and alcohol therapy, and the terms of his community control. Respondent, who formerly practiced as a bankruptcy attorney, returned to his law firm as a paralegal after his incarceration, and his work remains highly regarded.[3]

---

3. Respondent and his law firm agreed upon his continued employment before the effective date of Gov.Bar R. V(8)(G)(1), which now prohibits a lawyer suspended from practice from working

{¶ 33} Respondent has achieved much in terms of recovery and rehabilitation and has expressed gratitude for his arrest as the catalyst for both. But given the risks associated with his misconduct, we do not at this time consider the medical testimony to be clear and convincing proof of the fourth element of the BCGD Proc.Reg. 10(B)(2)(g) test – that respondent is currently capable of returning to the competent, ethical, and professional practice of law. We acknowledge that Dr. Levine testified, to a reasonable degree of psychiatric certainty, that respondent was ready to resume his practice. We, however, find too much equivocation in Dr. Levine's optimism for respondent's immediate future.

{¶ 34} Though making a "very good prognosis" for respondent, Dr. Levine could say only that he thought respondent "may eventually get married and have a reasonably normal sexual life." Thus, respondent has not reached normality in the area of his life that caused his ethical violations, and he therefore continues to present a risk of relapse to aberrant behavior. Indeed, Dr. Levine's tentativeness in vouching for respondent's ability to avoid deviant sexual activity is evident from his testimony:

{¶ 35} "So I would say that he's not going to turn into somebody he wasn't before, but he's going to improve that – he's going to continue struggling with these characterological features, and I think he can have a far better adaptation. So in general, I have felt optimistic about him. It wasn't simply a thing that I give to people who are my patients; that is, I sell hope, yes. But I also am realistic to know that some people really can't and won't get better under my care.

---

for a law firm with which he was associated at the time of the misconduct. A member of the firm testified that respondent's employment with the firm otherwise complies with Gov.Bar R. V(8)(G)(1) restrictions.

**{¶ 36}** "Aaron, I believe, has engaged in multi-modal therapy. He's done that in a responsible way. He has a sense of hope for himself. And, therefore, I think I can consciously say that the prognosis is pretty good. But I can't predict the future. You know, I can't predict his economic situation. * * * But he has made significant progress."

**{¶ 37}** As we explained in *Disciplinary Counsel v. Parker*, 116 Ohio St.3d 64, 2007-Ohio-5635, 876 N.E.2d 556, ¶ 84:

**{¶ 38}** "We have never allowed a lawyer who has committed misconduct because of a mental disability to continue to practice without the assurance of a qualified health-care professional, in conformity with BCGD Proc.Reg. 10(B)(2)(g)(iv), that the lawyer is able to practice safely. Evidence suggesting that the lawyer *may* be able to practice competently and in accordance with ethical and professional standards is not nearly enough. Our cases show that a lawyer whose diagnosed mental disability has contributed to his misconduct must provide competent proof that the disabling symptoms are fully managed *currently.* E.g., *Disciplinary Counsel v. Bowman,* 110 Ohio St.3d 480, 2006-Ohio-4333, 854 N.E.2d 480, ¶ 38; *Disciplinary Counsel v. Shaw,* 110 Ohio St.3d 122, 2006-Ohio-3821, 851 N.E.2d 487, ¶ 33; and *Columbus Bar Assn. v. McCorkle,* 105 Ohio St.3d 430, 2005-Ohio-2588, 828 N.E.2d 99, ¶ 11." (Emphasis added in part.)

**{¶ 39}** Moreover, Dr. Levine conditioned his prognosis on respondent's long-term psychiatric treatment, stating that respondent needed continued therapy in order to feel "hopeful and responsible" and "to behave in reality, and not return to this la-la land that he existed in for so many years." He observed that "[a] person with [respondent's] background could easily see a mental health professional weekly or twice a week, to gain control over the struggles I have described." Dr. Levine acknowledged that the nearly four-week intervals between

respondent's recent sessions is "dictated more by [respondent's] ability to pay, and less by his need," an unfortunate fact confirmed by respondent.

{¶ 40} We infer from these concessions that respondent actually needs greater psychiatric oversight than he can currently afford. This leaves us in some doubt as to whether respondent can and will fully sustain the treatment regimen that his psychiatrist insists is crucial for him to control his abnormal sexual impulses. We order respondent's indefinite suspension from practice and rely on the reinstatement process to determine when respondent is capable of practicing within ethical constraints. On the other hand, we also see no reason to prevent respondent from attempting to qualify for reinstatement beyond the two-year bar imposed by Gov.Bar R. V(10)(B) and therefore also afford credit for the interim suspension of his license.

{¶ 41} Respondent is therefore indefinitely suspended from the practice of law in Ohio. In addition to the requirements of Gov.Bar R. V(10), respondent must upon petitioning for reinstatement show proof of (1) his compliance with the terms of his ordered community control, (2) his compliance with his OLAP contract, and (3) his continued psychiatric treatment and his ability to return to the competent, ethical, and professional practice of law. Respondent is further granted credit for time served under the February 7, 2008 suspension of his license to practice ordered in *In re Ridenbaugh*, 116 Ohio St.3d 1511, 2008-Ohio-441, 880 N.E.2d 486.

{¶ 42} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., concurs with the sanction but would not give credit for time served under the interim suspension.

O'DONNELL, J., dissents and would permanently disbar respondent from the practice of law in Ohio.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Heather L. Hissom, Assistant Disciplinary Counsel, for relator.

Richard C. Alkire Co., L.P.A., Richard C. Alkire, and Dean Nieding, for respondent.

_____