[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Ballato,* Slip Opinion No. 2014-Ohio-5063.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2014-OHIO-5063**

**DAYTON BAR ASSOCIATION *v*. BALLATO.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Ballato,* Slip Opinion No. 2014-Ohio-5063.]**

*Attorneys at law—Misconduct—Violations of the Disciplinary Rules, including engaging in illegal conduct involving moral turpitude and conduct that adversely reflected on his fitness to practice—Indefinite suspension with no credit granted for time served under an interim felony suspension.*

(No. 2013-1985—Submitted February 5, 2014—Decided November 19, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-001.

_____

**Per Curiam**.

{¶ 1} Respondent, Thomas Andrew Ballato of Hamilton, Ohio, Attorney Registration No. 0064160, was admitted to the practice of law in Ohio in 1994. On October 15, 2009, we suspended his license to practice on an interim basis

pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice that he had been convicted of a felony. *In re Ballato*, 123 Ohio St.3d 1427, 2009-Ohio-5467, 914 N.E.2d 1066. The Board of Commissioners on Grievances and Discipline recommends that we now indefinitely suspend Ballato on findings that by engaging in the conduct underlying his felony conviction for possession of child pornography, he violated DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude) and 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Neither party objects to the board's findings of misconduct or its recommended sanction.

{¶ 2} On review, we find that Ballato committed the charged violations of the Disciplinary Rules of the Code of Professional Responsibility, and we indefinitely suspend him from the practice of law in Ohio with no credit for the time served under his interim felony suspension.

## Findings of Fact and Misconduct

{¶ 3} Over the course of his legal career, Ballato was fired on three separate occasions for using office computers to view internet pornography. He voluntarily enrolled in a six-week residential treatment program for sexual addiction in 2002—although he did not believe that he had a problem at that time—in an effort to save his first marriage. After the marriage ended the following year, he struggled to cope with the divorce and his former wife's efforts to curtail his visitation with their young son.

{¶ 4} Although Ballato participated in some group counseling, he continued to view pornography and remained in denial of his addiction. In 2004, he responded to an online advertisement for "amateur pornography for sale," and in the course of an e-mail exchange, the seller revealed that the offer was for child pornography. Ballato placed an order and mailed a partial payment for the magazines. Although he testified that he later decided not to complete the

transaction, he did not cancel the order. On October 4, 2004, the magazines were delivered by an undercover postal inspector to Ballato's home while he was at work. Shortly thereafter, federal officers arrived and conducted searches at both his home and office.

{¶ 5} The officers found an abundance of adult pornography and three images of child pornography on Ballato's office computer. At the panel hearing, Ballato testified that he had requested and received the images of child pornography online by instant message. He deleted them shortly after receiving them and reports that he did not use the images for sexual gratification. He reported that his sexual preference is adult women. Although he acknowledged that he developed a curiosity about teenage girls in pornography, he denied having any sexual interest in prepubescent children.

{¶ 6} In September 2006, Ballato was indicted on federal charges of receipt of child pornography and possession of child pornography as a result of the information obtained in the 2004 raid.

{¶ 7} Ballato eventually entered a conditional plea of guilty to a single charge of possessing child pornography, for which he received a sentence of 48 months in prison, a $100 fine, 100 hours of community service, and lifetime supervised release. He served 43 months in prison and was released in November 2012.

{¶ 8} The board found that by ordering and possessing child pornography, Ballato engaged in illegal conduct involving moral turpitude and that that conduct adversely reflected on his fitness to practice, in violation of DR 1-102(A)(3) and 1-102(A)(6). Because this conduct occurred in 2004, however, the board found no violation of the corresponding Rules of Professional Conduct, which were also charged in the complaint, because those rules apply only to conduct occurring on or after February 1, 2007. We adopt the board's findings that Ballato's conduct

violated DR 1-102(A)(3) and 1-102(A)(6) and hereby dismiss the alleged violations of the Rules of Professional Conduct.

**Sanction**

{¶ 9} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).

{¶ 10} The board found as aggravating factors that Ballato had a selfish motive in viewing and possessing child pornography, that he committed multiple offenses by downloading images from the internet and ordering magazines, and that the victims of child pornography are inherently vulnerable. *See* BCGD Proc.Reg. 10(B)(1)(b), (d), and (h).

{¶ 11} The board also found a number of significant mitigating factors. Ballato had practiced law for approximately ten years with no prior disciplinary offenses. *See* BCGD Proc.Reg. 10(B)(2)(a). From the beginning, he has accepted full responsibility for his misconduct and has fully cooperated in the disciplinary proceedings. *See* BCGD Proc.Reg. 10(B)(2)(d). And his misconduct did not harm any clients.

{¶ 12} Ballato also served 43 months in prison and has been sentenced to a lifetime of supervised release. *See* BCGD Proc.Reg. 10(B)(2)(f). Conditions of that supervised release currently prohibit him from using a computer unless it is necessary for his employment or approved by his probation officer and from having any unsupervised contact with minor children "with the exception of contact that may occur during the course of employment, provided that the [contact] occurs in a public setting and is in the discharge of his official job duties." He is also required to participate in mental-health counseling, submit to

polygraph testing, and permit searches of his person and property (including papers and electronic data) at any time.

{¶ 13} Shortly after the raid of his home and office, Ballato commenced counseling for his sex addiction and sought assistance from Sex and Love Addicts Anonymous ("SLAA"), a 12-step program similar to Alcoholics Anonymous. He understands that he will likely need to attend these meetings for the rest of his life.

{¶ 14} Once indicted, Ballato voluntarily ceased the practice of law, though he testified that he did not register his license as inactive until approximately January 1, 2008. From his arraignment in October 2006 until his sentencing hearing in April 2009, he remained on home detention with electronic monitoring.

{¶ 15} Following his release from prison, Ballato submitted to a sex-offender assessment conducted by Susan Ullman, L.I.S.W.-S., who diagnosed him with major depressive disorder and a hypersexual disorder. He is not classified as a pedophile.

{¶ 16} In January 2013, Ballato commenced individual and group therapy with Ullman, who has extensive experience providing sexual-offender counseling, and he continued to participate in therapy at the time of his disciplinary hearing. Ullman testified that he has been cooperative and eager to participate in counseling sessions, and that despite a long commute, he has had no unexcused absences. She reports that unlike most untreated sexual offenders she has encountered, Ballato has always taken responsibility for his actions.

{¶ 17} Ullman also testified that Ballato's diagnoses of major depressive disorder and a hypersexual disorder were "in large part responsible for the poor decisions that he made" and that he does not present a high risk of reoffending. The board found, however, that he had not achieved a sufficient, sustained period of successful treatment and therefore determined that his mental disability did not qualify as a mitigating factor. *See* BCGD Proc.Reg. 10(B)(2)(g) (providing that

in order to accord mitigating effect to a mental disability, there must be (i) a diagnosis by a qualified healthcare professional, (ii) a determination that the mental disability contributed to cause the misconduct, (iii) a sustained period of successful treatment, and (iv) a prognosis from a qualified healthcare professional that the attorney will be able to return to the competent, ethical, professional practice of law under specified conditions). At the time of his hearing, he had been in counseling for less than ten months because no treatment was available to him in prison. But Ullman testified that the standard treatment program takes approximately two years and usually requires follow-up sessions.

{¶ 18} With regard to Ballato's supervised release, Ullman testified that lifetime supervision is "a relatively recent phenomenon" and that she had no knowledge of anyone having sought to terminate a lifetime period of supervised release. Therefore, the board presumed that Ballato would actually remain on supervised release for life.

{¶ 19} In addition to the criminal penalties imposed for his conduct, Ballato testified that his addiction has cost him two marriages, his son, and his career. His biggest regret is the loss of his relationship with his son, whom he last saw in 2006, and who has since been adopted—with Ballato's consent—by his stepfather. Ballato currently works as a dishwasher and cook at a restaurant, earning $8.25 an hour. He is committed to informing potential employers and, one day, clients about his history.

{¶ 20} Relator recommended that Ballato be indefinitely suspended from the practice of law with no credit for time served under his interim felony suspension. Ballato, however, sought some credit for time served. Comparing the facts of this case to *Dayton Bar Assn. v. Greenberg*, 135 Ohio St.3d 430, 2013-Ohio-1723, 988 N.E.2d 559, and *Disciplinary Counsel v. Ridenbaugh*, 122 Ohio St.3d 583, 2009-Ohio-4091, 913 N.E.2d 443, the panel recommended that we indefinitely suspend Ballato and give him credit for the time served under his

interim felony suspension. Without stating its reasoning, the board, however, recommends that we give him no credit for time served.

{¶ 21} We indefinitely suspended Greenberg without credit for time served for possessing child pornography and transferring obscene materials to minors. *Greenberg* at ¶ 4, 13. The panel, therefore, distinguished Ballato's conduct from Greenberg's on the basis that Ballato was convicted only of possessing child pornography and that he did not contact, or even attempt to contact a minor, as Greenberg had. And although Ballato's offense appeared to be less serious, the panel noted that he served a prison sentence almost twice as long as Greenberg's sentence and will be supervised for the rest of his life, while Greenberg received a five-year period of supervised release. *See id.* at ¶ 4.

{¶ 22} The panel also found *Ridenbaugh* to be instructive, noting that Ridenbaugh had pleaded guilty to pandering sexually oriented matter involving a minor and illegal use of a minor in nudity-oriented material. *Ridenbaugh* at ¶ 7. Although Ridenbaugh's offenses appear to be more egregious than Ballato's, he served only 56 days of his 48-month federal prison sentence before he was released and placed on community control for five years, with requirements that he enter therapy and complete 300 hours of community service, among other restrictions. *Id.* at ¶ 8.

{¶ 23} Ridenbaugh presented testimony from a social worker from the Ohio Lawyers Assistance Program ("OLAP") that he had completed a sustained period of successful treatment for his dysthymia, chronic substance abuse, paraphilia, and attention deficit disorder. *Ridenbaugh,* 122 Ohio St.3d 583, 2009-Ohio-4091, 913 N.E.2d 443, ¶ 32. But we expressed concern about the frequency of his psychotherapy appointments, which had been reduced from once every two weeks to once every three and one-half weeks due to his financial constraints, and we inferred that he needed greater psychiatric oversight than he could currently afford. *Id.* at ¶ 31-33. We also found that his treating psychiatrist expressed "too

much equivocation" in his optimism for Ridenbaugh's immediate future. *Id.* at ¶ 33.

{¶ 24} Presented with the panel's recommendation that Ridenbaugh be suspended for two years, *without* credit for time served under his interim suspension, and the board's recommendation that he be indefinitely suspended from the practice of law, *with* credit for time served—and thereby subject to the more stringent process of petitioning for reinstatement pursuant to Gov.Bar R. V(10)(B)—we adopted the board's recommendation. In doing so, we stated:

> We order respondent's indefinite suspension from practice and rely on the reinstatement process to determine when respondent is capable of practicing within ethical constraints. On the other hand, we also see no reason to prevent respondent from attempting to qualify for reinstatement beyond the two-year bar imposed by Gov.Bar R. V(10)(B) and therefore also afford credit for the interim suspension of his license.

*Id.* at ¶ 40.

{¶ 25} Because we granted Ridenbaugh credit for time served, he was technically eligible to apply for reinstatement in February 2010—two years after his interim felony suspension was imposed—but the opportunity to apply for reinstatement is not a guarantee that an attorney's license will, in fact, be reinstated.

{¶ 26} Before an attorney can benefit from a grant of credit for time served, the attorney must first establish that he or she presently possesses all the mental, educational, and moral qualifications that are required of an applicant for admission to the practice of law in Ohio at the time of the applicant's original admission and must comply with the continuing-legal-education ("CLE")

requirements of Gov.Bar R. X(13) (requiring a suspended attorney to complete one hour of CLE for each month or part of a month of the attorney's suspension). *See* Gov.Bar R. V(10)(E)(1)(c).[1]

{¶ 27} Furthermore, a suspended attorney who has been placed on community control must either demonstrate by clear and convincing evidence that he has completed his community control, Gov.Bar R. V(10)(E)(1)(d), *or* provide an affidavit from the trial judge stating that the attorney is in compliance with the terms of community control and establish by clear and convincing evidence that good cause exists for this court to waive the requirement that the attorney's community control be completed before reinstatement. Gov.Bar R. V(10)(E)(2). Thus, even with credit for the time he had served under his interim felony suspension, Ridenbaugh faced more than three years of community control that could prevent him from being reinstated. *Ridenbaugh,* 122 Ohio St.3d 583, 2009-Ohio-4091, 913 N.E.2d 443, at ¶ 1, 8.

{¶ 28} At the time of Ballato's disciplinary hearing, he had not yet attained a sustained period of successful treatment for his depression and hypersexual disorder. He had not served a significant period of his term of supervised release nor had he completed a single polygraph examination—though Ullman testified that the probation office generally requires them every six to twelve months. Ballato acknowledged that he was not ready to return to the practice of law, but he stated that he would like to work toward that goal and that it would probably take him a good year to complete his CLE requirements and get ready to petition for reinstatement. He also expressed concern that the current conditions of his supervised release would leave his future client files open to

---

[1] Gov.Bar R. X(10)(E)(1)(c) requires a petitioner for reinstatement to establish by clear and convincing evidence that "the petitioner has complied with the continuing legal education requirements of Gov.Bar R. X, Section 3(G)." However, amendments to Gov.Bar R. X, effective January 1, 2014, moved the CLE requirements for disciplined attorneys, formerly set forth in Gov.Bar R. X(3)(G), to Gov.Bar R. X(13). *See* 115 Ohio St.3d CXLVI and 133 Ohio.St.3d CI, CVII.

search by his probation officer, and he expressed a desire to seek modification of those terms to protect his clients' confidentiality.

{¶ 29} For these reasons, we believe that an indefinite suspension with no credit for time served will both protect the public and give Ballato the time that he needs to address these issues and demonstrate that he is ready to resume the competent, ethical, and professional practice of law.

{¶ 30} Accordingly, Thomas Andrew Ballato is indefinitely suspended from the practice of law in Ohio with no credit for time served under his interim felony suspension.  Costs are taxed to Ballato.

Judgment accordingly.

PFEIFER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J. and O'DONNELL, J., dissent and would disbar respondent.

LANZINGER, J., dissents and would grant credit for time served.

_____

Brian Douglas Weaver, for relator.

James Thomas Ambrose, for respondent.

_____