**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Polizzi*, **Slip Opinion No. 2021-Ohio-1136.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1136

DISCIPLINARY COUNSEL *v.* POLIZZI.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Polizzi*, **Slip Opinion No. 2021-Ohio-1136.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Sex offenses committed prior to becoming attorney—Tier III sex offender— Permanent disbarment.*

(No. 2020-0740—Submitted January 12, 2021—Decided April 7, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-014.

_____

**Per Curiam.**

{¶ 1} Respondent, Anthony John Polizzi Jr., formerly of North Royalton, Ohio, Attorney Registration No. 0090170, was admitted to the practice of law in Ohio in 2013. On June 7, 2018, we suspended Polizzi's license on an interim basis following his convictions on multiple felony counts of gross sexual imposition and sexual battery. *See In re Polizzi*, 154 Ohio St.3d 1206, 2018-

Ohio-2181, 112 N.E.3d 910. The convictions arose from Polizzi's inappropriate sexual relationships with two minors while he served as a teacher in their school. The crimes occurred before he was admitted to the practice of law.

{¶ 2} In a March 12, 2019 complaint, relator, disciplinary counsel, alleged that Polizzi's criminal conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness) and that his conduct was sufficiently egregious to constitute a separate violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors but did not agree as to the appropriate sanction. Based on those stipulations and the evidence presented at a hearing before a three-member panel of the Board of Professional Conduct, the board issued a report recommending that Polizzi be permanently disbarred for committing the charged misconduct. Polizzi objects to the recommended sanction, arguing that the board improperly weighed the relevant aggravating and mitigating factors in this case and that our precedent supports the imposition of an indefinite suspension for his misconduct.

{¶ 3} For the reasons that follow, we adopt the board's findings of misconduct, overrule Polizzi's objections, and permanently disbar Polizzi from the practice of law in Ohio.

**Misconduct**

{¶ 4} From August 2006 until January 2010, Polizzi was employed by Cornerstone Christian Academy, where he taught high school history and middle school English, served as a mock-trial advisor and class advisor, and coached middle school cross country. In July 2017, the Lake County Grand Jury indicted Polizzi on one count of gross sexual imposition and 24 counts of sexual battery for conduct that allegedly occurred with a student ("Victim 1") in January and February 2010. A second indictment, issued in December 2017, charged Polizzi

with 33 counts of gross sexual imposition, 22 counts of sexual battery, and one count of attempted sexual battery for conduct that allegedly occurred with a second student ("Victim 2") between October 2007 and June 2008.

{¶ 5} On March 28, 2018, Polizzi pleaded guilty to one count of gross sexual imposition and three counts of sexual battery with respect to each victim. Polizzi admitted that in January 2010 he engaged in gross sexual imposition by touching Victim 1 on the thigh and compelling her to submit by force or threat of force. He also admitted that in early 2010 he committed three acts of sexual battery, by engaging in digital penetration, cunnilingus, and fellatio with Victim 1. Polizzi admitted that between October 2007 and June 2008, he engaged in gross sexual imposition by touching Victim 2's clothed genital area and causing her to have similar sexual contact with him, and he further admitted that he had compelled the victim to submit by force or threat of force. He also admitted that he committed three acts of sexual battery between March and June 2008 by digitally penetrating Victim 2. Polizzi admitted that at the time of these offenses, Victims 1 and 2 were minors enrolled at the school at which he was employed as a teacher, coach, or other person in authority.

{¶ 6} The trial court accepted Polizzi's plea and dismissed the remaining counts of the indictment. In May 2018, Polizzi was sentenced to an aggregate term of 396 months (33 years) in prison. The court also found Polizzi to be a Tier III sex offender, which will require him to comply with certain sex-offender-registration requirements every 90 days for the rest of his life. *See* R.C. 2950.01(G)(1)(a) and (b), 2950.06(B)(3), and 2950.07(B)(1).

{¶ 7} Polizzi appealed his sentence to the Court of Appeals for the Eleventh District. On June 24, 2019, the appellate court vacated his sentence and remanded the matter for resentencing consistent with its opinion. *State v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063 and 2018-L-064, 2019-Ohio-2505, *appeal not accepted,* 157 Ohio St.3d 1442, 2019-Ohio-4211, 132 N.E.3d 708. On March 2,

2020, the parties to this disciplinary case supplemented the record with Stipulated Exhibit 15, which contains copies of the trial court's February 4, 2020 resentencing entries and Polizzi's corresponding notices of appeal.[1] At the resentencing hearing, the trial court sentenced Polizzi to an aggregate term of 358 months (29 years, 10 months) in prison.

{¶ 8} During his disciplinary hearing, Polizzi testified that Victim 1 and Victim 2 had been students in his American History class and that he had coached Victim 1's mock-trial team. Polizzi had met privately at the school with Victim 2 around a dozen times, at her mother's request, to help her with a personal family matter. He testified that Victim 2 was 17 or 18 years old and still a student at the school when he began having illegal sexual contact with her in April 2008 and that he continued to engage in sexual conduct with her until October 2009.

{¶ 9} Polizzi testified that he had communicated with both victims by text message, but he maintained that only one of those text messages, a text to Victim 1, was sexually suggestive. He admitted that he had met and engaged in sexual conduct with each victim at a park. After one such meeting with Victim 1 in January 2010, someone reported having seen Polizzi arrive at the school with Victim 1. When confronted by the superintendent of the school, Polizzi admitted that he had met with Victim 1, but he was not honest about his sexual relationship with his students. Nonetheless, the superintendent informed Polizzi that his contract would not be renewed.

{¶ 10} In August 2010, Polizzi began to attend the University of Akron School of Law and work at the Cuyahoga County Prosecutor's Office. He graduated in December 2012 and took the February 2013 bar exam. Although he

---

1. Although Gov.Bar R. V(18)(C) states, "Any disciplinary proceeding instituted against a judicial officer or an attorney based on a conviction of an offense or on default under a child support order shall not be brought to hearing until all direct appeals from the conviction or proceedings directly related to the default determination are concluded," Polizzi has not objected to the fact that his disciplinary hearing occurred on December 9, 2019, approximately seven weeks before his resentencing hearing and two months before he appealed his resentencing orders.

disclosed the termination of his employment at Cornerstone Christian Academy on his bar application, he did not disclose that he had engaged in sexual conduct with his students.

{¶ 11} Polizzi also testified at his disciplinary hearing that he had attempted to communicate with both victims after he was terminated and the sexual conduct had ended. For example, Polizzi admitted that he sent Victim 1 an e-mail in 2012. He initially testified that he could not remember what e-mail address he had used to send the message, other than that it was a "fake" address. After relator asked him if the e-mail address was "dirty, inappropriate, or obscene," he stated, "Yeah, it was something inappropriate. It was something about wet." Polizzi claimed that he could not remember the details of the message, but he said that the e-mail did not identify him as the sender and it asked Victim 1 if she remembered her experiences with him. But when relator pressed him, Polizzi admitted that the question he had asked in the e-mail was "something vulgar."

{¶ 12} Polizzi testified that Victim 1 had appeared at his house one day in 2012 and that he had told her that he did not want to see her again. He claimed that he did not respond when Victim 1 sent him a text message the next year, because he realized he had "messed up" and he wanted to move on with his life. He recalled that he had last seen Victim 1 in 2015, when she confronted him while he was having dinner with his wife at a restaurant where Victim 1 worked. He stated that Victim 1 had left a message for him at his law office in 2017 but that he never responded.

{¶ 13} Polizzi also testified that he had attempted to communicate with Victim 2 for several years after the sexual abuse stopped. He admitted that he had sent her an e-mail to wish her a happy birthday, said hello to her at church, made a U-turn to confirm that he had seen her drive by, and volunteered to help at a church-sponsored event that she had organized for the prior two years—though he

claimed that he withdrew that offer after learning that she was involved because he had "no interest" in seeing her again.

{¶ 14} The board found that Polizzi had been slow to take responsibility for his actions and that he had offered inconsistent testimony as to when he had taken responsibility. For example, at his disciplinary hearing, Polizzi claimed that during the summer of 2010, he recognized that he had done something very wrong. But at his May 2018 sentencing hearing, Polizzi acknowledged that he had initially denied responsibility for his crimes during an April 2018 presentence evaluation with a court-appointed psychologist—purportedly because he wanted to see if he could trust the psychologist before telling him everything. The board also expressed concern that Polizzi engaged in victim-shaming when he claimed that some of the victims' statements at his May 2018 sentencing hearing were "exaggerations" or "embellishments" and when he told a psychologist that he wanted the victims to experience misery for what they were doing to him.

{¶ 15} The parties stipulated and the board found that Polizzi's illegal conduct adversely reflected on his honesty and trustworthiness, in violation of Prof.Cond.R. 8.4(b), and that the conduct was sufficiently egregious to warrant a separate finding that it adversely reflected on his fitness to practice law, in violation of Prof.Cond.R. 8.4(h), *see Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21. We adopt these findings of misconduct.

## Recommended Sanction

{¶ 16} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} As aggravating factors, the parties stipulated that Polizzi acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed

multiple offenses, and caused harm to vulnerable victims. *See* Gov.Bar R. V(13)(B)(2), (3), (4), and (8). The board accepted those stipulations and also found that Polizzi's failure to accept responsibility for his actions was an aggravating factor. *See* Gov.Bar R. V(13)(B)(7). As for mitigating factors, the parties stipulated and the board found that Polizzi has no prior disciplinary record, fully cooperated in the disciplinary proceeding, and has had other sanctions imposed for his misconduct—namely his criminal convictions and sentence and the loss of his teaching license. *See* Gov.Bar R. V(13)(C)(1), (4), and (6).

{¶ 18} In considering the appropriate sanction for Polizzi's misconduct, the board noted that in *Disciplinary Counsel v. Williams*, 130 Ohio St.3d 341, 2011-Ohio-5163, 958 N.E.2d 555, a case in which the attorney had been convicted of one count of kidnapping with a sexual motivation and two counts of rape of a seven-year-old boy (the attorney's nephew), we stated that permanent disbarment is the only appropriate sanction for an attorney convicted of raping a child. The board also considered multiple cases in which we indefinitely suspended attorneys who had committed sexual offenses involving minors. *See, e.g.*, *Disciplinary Counsel v. Grossman*, 143 Ohio St.3d 302, 2015-Ohio-2340, 37 N.E.3d 155 (attorney had been convicted of one count of receipt of visual depictions of child pornography; attorney also admitted that he had communicated online with an undercover police officer who was posing as the father of an 11-year-old girl and that they had discussed various sex acts involving the fictitious girl before the attorney went to a prearranged location where he expected to meet her); *Disciplinary Counsel v. Ridenbaugh*, 122 Ohio St.3d 583, 2009-Ohio-4091, 913 N.E.2d 433 (attorney had been convicted of three fourth-degree felony counts of pandering sexually oriented matter involving a minor and one fifth-degree felony count of illegal use of a minor in nudity-oriented material and had admitted to surreptitiously recording his neighbors as they engaged in sexual activity).

**{¶ 19}** In this case, however, the board identified four factors that weigh against the imposition of an indefinite suspension and in favor of permanent disbarment. First, the board found that Polizzi violated his position of trust and authority as a teacher by committing abhorrent and illegal sexual offenses against the minor students who had been entrusted to his care. Second, the board found that even after his sexual crimes ended, Polizzi continued to abuse both of his victims by engaging in inappropriate, and in at least one instance, obscene, communications with them. In fact, the victim-impact statements at his sentencing hearing demonstrate that his e-mails, texts, and in-person attempts to communicate with his victims—even years after the physical abuse ceased— caused them additional pain and trauma. Third, the board found that Polizzi's testimony and behavior demonstrate that he does not fully appreciate the wrongfulness of his misconduct. Finally, the board found that Polizzi tried to shame his victims by characterizing their descriptions of his criminal conduct as "exaggerations" and stating that he wanted them to experience misery for the harm they had caused him by reporting his crimes.

### Polizzi's Objections to the Recommended Sanction

**{¶ 20}** Polizzi objects to the board's recommended sanction. He argues that the board improperly found that he failed to accept responsibility for his criminal conduct and then used that incorrect finding as an aggravating factor. Instead, he argues, the board should have considered his expressed remorse and acceptance of responsibility, and several other facts, as mitigating factors. Lastly, Polizzi asserts that our precedent supports the imposition of an indefinite suspension rather than permanent disbarment for his misconduct.

*The Record Supports the Board's Assessment of the Aggravating and Mitigating Factors Present in the Case*

**{¶ 21}** Polizzi claims that he has accepted responsibility for his misconduct, arguing that he entered a guilty plea in his criminal case that resulted

8

in the imposition of an almost 30-year prison sentence, he has repeatedly apologized for his misconduct, and he regretted saying that he wanted his victims to experience misery. He also asserts that the board unfairly held him to the ethical standards of an attorney when it considered his repeated attempts to communicate with his victims after his sexual conduct ceased but before he was admitted to the bar. The record is clear, however, that Polizzi's criminal convictions alone form the basis of his stipulated violations of Prof.Cond.R. 8.4(b) and 8.4(h).

{¶ 22} Polizzi's continued communication with his victims is just one of many factors that demonstrate his ongoing lack of remorse and failure to accept responsibility for his crimes. For example, as described above, at his disciplinary hearing, Polizzi was unwilling or unable to admit the true nature of the e-mail that he had sent to Victim 1 approximately eight years earlier. Although Polizzi now asserts that his hesitance in responding to relator's questions illustrates nothing but shame, he actually attempted to convince the panel that he had e-mailed Victim 1 only because he felt guilty and wanted "closure." On further cross-examination, however, he admitted that he had used a fake e-mail address, had not disclosed his identity, and had asked Victim 1 at least one sexually explicit question, so the e-mail is more properly characterized as an attempt to remind the victim of—rather than apologize for—his past criminal conduct.

{¶ 23} In addition, the record demonstrates that Polizzi did not truly acknowledge responsibility for his criminal conduct when he entered a guilty plea. By pleading guilty to two counts of gross sexual imposition, he admitted that he had purposely compelled both of his victims to submit to sexual contact by force or threat of force. Yet at his sentencing hearing, Polizzi contradicted those facts when he claimed that the sexual contact had been completely consensual.

{¶ 24} Nor did Polizzi plead guilty to spare his victims the pain of recounting his abusive criminal conduct at trial. At his disciplinary hearing,

Polizzi testified, "[I]n some ways, I felt that I was strong-armed into a plea agreement because I was trying to avoid a painful trial *for my family* and also 405 years [in prison]." (Emphasis added.) He also offered some apologies, claimed to accept responsibility for his conduct, and stated, "I regret * * * saying things were consensual when, when you're in a position of authority, they are not." But even though the disciplinary hearing took place a full ten years after he committed the crimes and more than a year after he heard his victims' emotional statements at his sentencing hearing, Polizzi was unable to articulate to the panel any real understanding of the harm that he had caused or express any real empathy for his victims.

{¶ 25} Polizzi next asserts that the board failed to accord any weight to the volunteer services he provided by giving legal advice at free legal clinics, by teaching Sunday school, and by doing landscaping for his church. He also contends that the board failed to consider the letters submitted by two former clients attesting to his skilled legal representation and a letter from his wife reporting that his criminal conduct was out of character and the product of tremendous personal stress. Polizzi also urges us to consider six additional character letters that he submitted with his objections to the board's recommendation. However, Polizzi's community involvement and the letters from his former clients, family members, and friends—even when combined with the fact that other sanctions have been imposed for his criminal conduct—offer little to counteract the significant aggravating factors present in this case.

{¶ 26} As we have observed, "it is of no consequence that the board's findings of fact are in contravention of [a] respondent's or any other witness's testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000), quoting *Cross v. Ledford*, 161 Ohio St. 469, 478, 120 N.E.2d 118 (1954).

Because the record in this case does not weigh heavily against the findings of the panel, which were subsequently adopted by the board, regarding Polizzi's failure to accept full responsibility for his crimes, "we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard [respondent's testimony] firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

*Disbarment Is the Appropriate Sanction for Polizzi's Misconduct*

{¶ 27} We are not persuaded by Polizzi's arguments that our precedent supports the imposition of an indefinite suspension for the misconduct at issue in this case.

{¶ 28} Polizzi cites multiple cases in which we indefinitely suspended attorneys who had received, possessed, or pandered child pornography or sexually oriented material involving a minor—some of whom had also arranged sexual encounters with undercover law-enforcement officers posing as minors. *See, e.g.*, *Disciplinary Counsel v. Martyniuk*, 150 Ohio St.3d 220, 2017-Ohio-4329, 80 N.E.3d 488 (attorney had been convicted of 20 fourth-degree felony counts of pandering sexually oriented material involving a minor); *Dayton Bar Assn. v. Ballato*, 143 Ohio St.3d 76, 2014-Ohio-5063, 34 N.E.3d 858 (attorney had been convicted of one count of possessing child pornography); *Dayton Bar Assn. v. Greenberg*, 135 Ohio St.3d 430, 2013-Ohio-1723, 988 N.E.2d 559 (attorney had been convicted of one count of possessing child pornography and one count of transferring obscene materials to minors for sending sexual videos of himself to undercover officers posing as 12- and 13-year-old girls).

{¶ 29} We have also indefinitely suspended at least two attorneys who, like Polizzi, had been convicted of crimes for engaging in sexual conduct with teenage girls. In *Disciplinary Counsel v. Wanner*, 15 Ohio St.3d 319, 473 N.E.2d 829 (1984), an attorney had been convicted of one third-degree felony count of sexual battery. During his disciplinary proceedings, Wanner stipulated that the

conviction resulted from his twice engaging in sexual conduct with two 17-year-old girls who were under his supervisory and disciplinary authority in the group home where he was employed. In addition to Wanner's cooperation in the proceeding and his apparent desire to resolve his problems, seven attorneys testified or wrote letters attesting that he was a competent, conscientious, and ethical attorney and firmly recommending against permanent disbarment. Similarly, in *Disciplinary Counsel v. Pansiera*, 77 Ohio St.3d 436, 674 N.E.2d 1373 (1997), we indefinitely suspended an attorney who had been convicted of seven counts of corrupting a minor for engaging in sexual conduct with a child between the ages of 13 and 16 whom he had befriended in the Alcoholics Anonymous program. Although Pansiera had not had a lawyer-client relationship with the child, we found that he had been in a position of dominance by virtue of his seniority and status as a professional person and that the child had been in a position of vulnerability as a participant in a substance-abuse rehabilitation program.

{¶ 30} The most significant distinction between disciplinary cases involving sexual misconduct that resulted in an indefinite suspension and those that resulted in permanent disbarment is that—like Polizzi—the attorneys who were disbarred were either convicted of gross sexual imposition or used force, the threat of force, or extreme forms of coercion to compel their victims to submit to their sexual demands. For example, we permanently disbarred an attorney who had been convicted of one third-degree felony count of gross sexual imposition and one third-degree misdemeanor count of sexual imposition. *Cincinnati Bar Assn. v. Lisner*, 65 Ohio St.2d 62, 417 N.E.2d 1381 (1981). Similarly, we disbarred an attorney who had, over the course of many months, solicited sex from three legally and financially vulnerable female clients in exchange for reduced legal fees and used force against one of those women in an attempt to compel her to kiss him. *Disciplinary Counsel v. Sturgeon*, 111 Ohio St.3d 285,

2006-Ohio-5708, 855 N.E.2d 1221. And in *Disciplinary Counsel v. Ostheimer*, 72 Ohio St.3d 304, 649 N.E.2d 1217 (1995), we permanently disbarred an attorney who had been convicted of two counts of attempted felonious sexual penetration and two counts of forgery after he fabricated court documents to convince his adopted daughter that she had been placed in a probation program and then used those documents to coerce her to submit to his sexual demands for at least three years.

{¶ 31} In this case, for more than two years, Polizzi used his authority as a teacher to compel two of his students to engage in sexual conduct with him and threatened at least one victim with discipline or expulsion to keep her from reporting his conduct. In pleading guilty to two counts of gross sexual imposition, Polizzi also admitted that he had used force or the threat of force to compel both victims to submit to his sexual demands. Not only did he harm these young women and their families, he also betrayed the public's trust in him as a licensed teacher.

{¶ 32} Although Polizzi disclosed the termination of his teaching employment on his bar-exam application, he did not disclose that he had had sexual contact with two of his students. Had Polizzi disclosed that conduct or been convicted before he sought admission to the bar, his application most certainly would have been disapproved.

{¶ 33} In fact, in *In re Application of Daubenmire*, 137 Ohio St.3d 435, 2013-Ohio-4977, 999 N.E.2d 669, we disapproved an application to register as a candidate for admission to the Ohio bar filed by an applicant who had been convicted of one second-degree felony count of pandering obscenity involving a minor for having viewed child pornography for approximately five years. Although Daubenmire had complied with all the conditions of his criminal sentence at the time of his application, presented significant evidence of his rehabilitation, and fully disclosed his criminal conduct to his law school and this

court, we expressed concern that admitting a person who is required to register as a sex offender to the practice of law would adversely affect the public's perception of the profession as a whole. *Id*. at ¶ 8-11, 19. We determined that it was in the best interest of the public and the profession that we disapprove Daubenmire's application—though we authorized him to reapply as a candidate for the bar exam *after* he completed his ten-year sex-offender-registration obligation. *Id.* at ¶ 19. In this case, however, Polizzi is a Tier III sex offender with a lifetime reporting requirement.

{¶ 34} Having considered Polizzi's reprehensible criminal sexual assault of two of his high school students, the relevant aggravating and mitigating factors, and the applicable precedent, we adopt the board's findings of misconduct, overrule Polizzi's objections, and hold that permanent disbarment is necessary in this case to protect the public, to preserve the integrity of the profession, and to maintain public confidence in the legal profession as a whole. *See, e.g.*, *Disciplinary Counsel v. Calabrese*, 143 Ohio St.3d 229, 2015-Ohio-2073, 36 N.E.3d 151, ¶ 18 (recognizing that although the primary purpose of disciplining attorneys for misconduct is to protect the public, not to punish the offender, there are some instances in which permanent disbarment is necessary to maintain public confidence in the legal profession and preserve the integrity of the profession).

## Conclusion

{¶ 35} Accordingly, Anthony John Polizzi Jr. is permanently disbarred from the practice of law in Ohio. Costs are taxed to Polizzi.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, and BRUNNER, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by DEWINE and STEWART, JJ.

---

**DONNELLY, J., dissenting.**

{¶ 36} The court today permanently disbars respondent, Anthony John Polizzi Jr., but not because of anything that Polizzi did or did not do as an attorney. The court imposes this ultimate form of discipline for criminal offenses that were committed three to five years before Polizzi became an attorney but were not prosecuted until four years after he became an attorney. Because that sanction is inconsistent with our precedent, I respectfully dissent.

{¶ 37} To be absolutely clear, when it is discovered that an attorney has committed criminal acts, whether the conduct occurs after bar admission or before, swift and severe consequences are necessary. Polizzi's criminal conduct indisputably predated his 2013 admission to the practice of law. In the only Ohio case to which we have been directed where discipline was imposed for criminal conduct that occurred prior to the attorney's admission to the practice of law, this court indefinitely suspended the attorney. *See Disciplinary Counsel v. Clark,* 40 Ohio St.3d 81, 531 N.E.2d 671 (1988).

{¶ 38} The facts of *Clark* are particularly noteworthy here. In that case, the attorney, Jonathan Clark, had been involved in an international drug-smuggling ring while he attended law school in Toledo. The leader of the ring was arrested around the time Clark took the bar examination in 1984, but Clark was not convicted of conspiring to sell, give, or distribute more than five pounds of marijuana and tax evasion until two years after he was admitted to the practice of law. In 1982, as part of the drug ring, Clark "helped unload approximately 11,500 pounds of marijuana from a boat" docked in Virginia, and prior to the boat's arrival, he "lived in a 'safe house' for approximately one month in order to make the house look occupied and thus conceal the purpose for which it had been rented—mainly to receive large deliveries of marijuana." *Id.* at 81-82. Clark also removed the inner workings of two newly purchased television sets and filled them with money so that the money could be transported secretly. In 1983, Clark held about $1,000,000 for the leader of the ring for about three weeks and

prepared bundles of money to pay members of the ring. Clark then "placed approximately $500,000 of the currency in gutted television sets and transported the sets in a rented car to Florida so that they could be shipped to Colombia." *Id.* at 82. Clark received $60,000 for the efforts described above.

{¶ 39} Despite those facts, this court declined to follow the board's recommendation of permanent disbarment, holding that Clark had "not been shown to be so lacking in character and fitness that he should be forever forbidden from regaining his professional status." *Id.* at 83. The court instead imposed an indefinite suspension on Clark. Clark was reinstated to the practice of law five years later. 66 Ohio St.3d 1223, 614 N.E.2d 758 (1993).

{¶ 40} In this case, the parties stipulated that Polizzi violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness) and 8.4(h) (prohibiting a lawyer from engaging in egregious conduct that adversely reflects on the lawyer's fitness to practice law). For me, the only issue in the case is whether permanent disbarment is the appropriate sanction.

{¶ 41} " 'The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law.' " *Disciplinary Counsel v. Sarver*, __ Ohio St.3d __, 2020-Ohio-5478, __ N.E.3d __, ¶ 27, quoting *Disciplinary Counsel v. Sabroff*, 123 Ohio St.3d 182, 2009-Ohio-4205, 915 N.E.2d 307, ¶ 20. "When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases." *Disciplinary Counsel v. Piazza*, 159 Ohio St.3d 150, 2020-Ohio-603, 149 N.E.3d 469, ¶ 16.

{¶ 42} This case does not concern ethical violations for Polizzi's conduct in his capacity as an attorney. Rather, the attorney misconduct here involves

convictions for sex offenses that Polizzi committed before he became an attorney. The issue here is whether that misconduct makes Polizzi wholly unfit to ever again function as an attorney such that permanent disbarment is the appropriate sanction.

{¶ 43} To be sure, this court has disbarred attorneys who engaged in sexual misconduct. *See, e.g., Disciplinary Counsel v. Williams,* 130 Ohio St.3d 341, 2011-Ohio-5163, 958 N.E.2d 555 (attorney disbarred for convictions for two counts of raping his seven-year-old nephew and one count of kidnapping him with a sexual motivation, all first-degree felonies); *Disciplinary Counsel v. Ostheimer,* 72 Ohio St.3d 304, 649 N.E.2d 1217 (1995) (attorney disbarred for deceiving and coercing his adopted teenage daughter into submitting to his sexual demands for at least three years, culminating in the attorney's conviction on multiple counts of attempted felonious sexual penetration and forgery); *Cincinnati Bar Assn. v. Lisner,* 65 Ohio St.2d 62, 417 N.E.2d 1381 (1981) (attorney disbarred after pleading no contest and being convicted on felony charges of gross sexual imposition and misdemeanor sexual imposition; attorney failed to file an answer or appear for his disciplinary hearing); *Disciplinary Counsel v. Sturgeon,* 111 Ohio St.3d 285, 2006-Ohio-5708, 855 N.E.2d 1221 (attorney disbarred for engaging in coercive sexual misconduct with his clients; court found that attorney had preyed on women who were in vulnerable legal and financial circumstances and used the attorney-client relationship to gratify his own sexual interests).

{¶ 44} In each of these cases, however, the crimes and/or sexual misconduct occurred *after* the attorney was licensed to practice law. I can readily understand imposing the most severe disciplinary sanction when the offender has taken an oath to uphold the constitution and laws of this nation and state and the ethical standards of the legal profession but thereafter engages in egregiously predatory conduct that violates state laws and our profession's ethical standards. But that is not this case.

{¶ 45} This court has chosen the less severe sanction of indefinite suspension for equally reprehensible criminal acts, including predatory sexual acts involving children. *See Disciplinary Counsel v. Connors*, 160 Ohio St.3d 338, 2020-Ohio-3339, 156 N.E.3d 895 (indefinite suspension imposed on attorney who pleaded guilty to felony use of a minor in nudity-oriented material or performance based on the recovery of more than 1,000 images of child pornography and erotica involving prepubescent females from electronic devices at the attorney's home); *Disciplinary Counsel v. Ridenbaugh,* 122 Ohio St.3d 583, 2009-Ohio-4091, 913 N.E.2d 443, ¶ 7, 12 (indefinite suspension imposed on attorney convicted of pandering sexually oriented matters involving a minor and illegal use of a minor in nudity-oriented material or performance: "In the case of the voyeurism, [Ridenbaugh's] fetishes led him to intrude into the most intimate aspects of the lives of unsuspecting individuals, many of whom felt compelled to relocate after [Ridenbaugh's] activity was unveiled. And in the case of the child pornography, [Ridenbaugh's] viewing of minors for sexual gratification provides direct financial and other support for an insidious subculture that victimizes the most defenseless of our society"); *Disciplinary Counsel v. Goldblatt,* 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091 (indefinite suspension imposed on attorney following felony convictions for compelling prostitution and possessing criminal tools, which resulted from the attorney's attempt to arrange a sexual encounter with an underage victim).

{¶ 46} In *Columbus Bar Assn v. Linnen,* 111 Ohio St.3d 507, 2006-Ohio-5480, 857 N.E.2d 539, we indefinitely suspended an attorney for indecently exposing himself to at least 30 different women and photographing their reactions. Adopting the board's recommendation of indefinite suspension in that case, we recognized that disbarment is required for "conduct involv[ing] predatory sexual acts and dishonesty beyond any possible redemption." *Id.* at ¶ 29.

**{¶ 47}** In *Disciplinary Counsel v. Pansiera,* 77 Ohio St.3d 436, 674 N.E.2d 1373 (1997), a case that is perhaps the most comparable to the present case, we indefinitely suspended an attorney who had exploited his relationship with a teenager, whom he had befriended through Alcoholics Anonymous, had engaged in sexual acts with that teenager, and was later convicted of multiple counts of corrupting a minor. In that case, we found that the attorney used his position of dominance and the child victim was in a position of vulnerability.

**{¶ 48}** Finally, in *Disciplinary Counsel v. Wanner,* 15 Ohio St.3d 319, 473 N.E.2d 829 (1984), we indefinitely suspended an attorney following his felony conviction for sexual battery for engaging in sexual conduct with two teenage girls under his supervisory and disciplinary authority. We noted in that case that the attorney's misconduct did not occur as a part or result of his practice of law.

**{¶ 49}** These cases confirm that an indefinite suspension is sometimes adequate to protect the public from attorneys whose serious misconduct violates state criminal laws and/or ethical precepts and that such misconduct does not necessarily render them so far beyond redemption as to be inherently incapable of ever again providing professional legal services. According to the majority, the most significant distinction between sexual misconduct cases that resulted in permanent disbarment and those that resulted in an indefinite suspension "is that—like Polizzi—the attorneys who were disbarred were either convicted of gross sexual imposition or used force, the threat of force, or extreme forms of coercion to compel their victims to submit to their sexual demands." Majority opinion at ¶ 30. I do not dispute the assertion that the commission of sex offenses involving the element of force or threatened force can magnify the degree of professional misconduct, even though our case law does not expressly so state. But it does not necessarily follow that Polizzi's preadmission criminal offenses make him so far "beyond any possible redemption," *Linnen*, 111 Ohio St.3d 507,

2006-Ohio-5480, 857 N.E.2d 539, at ¶ 29, that the only appropriate disciplinary sanction is to prevent him from ever again serving as an attorney.

{¶ 50} " 'We have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public.' " *Piazza*, 159 Ohio St.3d 150, 2020-Ohio-603, 149 N.E.3d 469, at ¶ 23, quoting *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 19.

{¶ 51} In this case, the criminal conduct occurred eight to ten years prior to Polizzi's 2017 indictment and three to five years before he became an attorney. As an attorney, Polizzi has not committed any further criminal acts. In addition to having no prior disciplinary record, Polizzi fully cooperated with the disciplinary process, he accepted full responsibility for his conduct by pleading guilty in the criminal case, and he has been subjected to other penalties—a lengthy criminal sentence and the loss of his teaching license. He repeatedly expressed remorse and accepted full responsibility in these disciplinary proceedings for his misconduct.

{¶ 52} Our primary objective in disciplinary proceedings is to protect the public in relation to the lawyer's fitness to practice law through sanctions that are consistent with those imposed in similar cases. The discipline imposed should be both purposeful and proportionate. I do not believe that Polizzi's disbarment is compelled by our precedents or by the principles that guide the disciplinary process.

{¶ 53} I do not know whether Polizzi should be permitted to practice law again. I do not believe that that issue should be considered until there has been sufficient time and opportunity for Polizzi's due reflection and true contrition and for Polizzi to establish affirmative evidence of his redemption. But today's decision declaring him to be beyond redemption and categorically unfit to ever practice law again eliminates any incentive for him to seek professional and

perhaps personal rehabilitation.  I would indefinitely suspend Polizzi from the practice of law.  I therefore dissent, respectfully.

DEWINE and STEWART, JJ., concur in the foregoing opinion.

—————————

Joseph M. Caligiuri, Disciplinary Counsel, and Lia J. Meehan and Jennifer A. Bondurant, Assistant Disciplinary Counsel, for relator.

Law Office of Anthony Greco, L.P.A., Anthony W. Greco, Natalie V. McGee, and Katherine A. Woodford, for respondent.

—————————