[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Goodman*, Slip Opinion No. 2024-Ohio-852.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-852

DISCIPLINARY COUNSEL *v*. GOODMAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Goodman*, Slip Opinion No. 2024-Ohio-852.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Permanent disbarment.*

(No. 2023-0740—Submitted July 18, 2023—Decided March 12, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-040.

_____

**KENNEDY, C.J.**

{¶ 1} Respondent, Amber Renee Goodman, of Elida, Ohio, Attorney Registration No. 0096383, was admitted to the practice of law in Ohio in 2017.

{¶ 2} Over a period of four to six months, Goodman actively and fully participated in the repeated rape of a 13-year-old child, engaging in sexual conduct with the victim—including cunnilingus and digital penetration—while the child's

father alternated having sexual intercourse with each of them. Goodman's willingness, in the victim's words, to "join in" perpetuated and added to the abuse that the child suffered, and Goodman became just another "monster" in the child's life. And rather than report this abuse to authorities, Goodman told the victim not to tell anyone about it.

{¶ 3} Goodman was convicted on one count of unlawful sexual contact with a minor. We suspended her license to practice law on an interim basis, and relator, disciplinary counsel, charged her with violations of the Rules of Professional Conduct. A three-member panel of the Board of Professional Conduct found that Goodman had committed professional misconduct and recommended that we indefinitely suspend her from the practice of law with no credit for the time she has served under her interim felony suspension. In addition, the panel recommended that notwithstanding the provisions of Gov.Bar R. V(25)(D)(2), Goodman not be permitted to petition for reinstatement to the practice of law until she has successfully completed the five-year term of community control imposed in her criminal case. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

{¶ 4} We adopt the board's findings of misconduct but reject its recommended sanction. Instead, after a thorough review of the record and our precedent, we conclude that the only appropriate sanction for Goodman's misconduct is permanent disbarment.

## MISCONDUCT

### *Goodman's Crimes*

{¶ 5} In January 2019, the victim, L.H., then 13 years old, revealed to a school counselor that she had been sexually assaulted by her father. The counselor contacted L.H.'s mother, who brought L.H. to the Fostoria Police Department to report the crimes.

2

{¶ 6} According to L.H., the abuse started when she was 9 years old, when her father penetrated her vagina with his fingers and his penis. L.H. "didn't know what was happening, and [she] didn't move and [she] pretended [she] was sleeping." L.H.'s father later told her not to tell anyone. When L.H. was 11 years old, her father would pull down her pants, touch her vagina and buttock, and insert his penis in her vagina without her consent. The victim's father continued to have vaginal intercourse with the child and had her perform oral sex on him on numerous occasions until the victim was 13 years old. L.H.'s father would have sex with her even when it hurt her, and she would sometimes say that she was having her period in an effort to avoid having sex with him.

{¶ 7} L.H. also reported to police that Goodman had molested her. According to L.H.'s statements to police, which were admitted into evidence at Goodman's disciplinary hearing before the three-member panel of the board, L.H.'s father said that Goodman wanted one of his children to walk in on them having sex and that Goodman selected L.H. "because she [was] 13 and she [could] learn things." Goodman and L.H.'s father would first have the child watch them have sex. He would then touch L.H.'s vagina while having sex with Goodman and alternate having sex with Goodman and the child. This included an occasion when L.H.'s father had the child wear her cheerleading uniform and had sex with her before Goodman "joined in." L.H. reported that Goodman "penetrated [L.H.'s] vagina with her fingers 7 times and penetrated [L.H.'s] vagina with her [tongue] 7 times." The child did not see Goodman as another victim of her father but instead described Goodman's actions as those of a "monster."

{¶ 8} On May 3, 2022, Goodman executed a waiver of indictment, acknowledging that she would be charged with unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (B)(3), a third-degree felony. In the Seneca County Common Pleas Court that same day, she pleaded guilty to a one-count bill of information charging her with that offense.

**{¶ 9}** The common pleas court sentenced Goodman to serve a 30-month prison term, ordered her to serve a five-year mandatory term of postrelease control, and classified her as a Tier II sex offender. The court ordered Goodman to report to the sheriff of Seneca County on May 17, 2022, for transport to prison. After Goodman served almost eight months in prison, the court granted her motion for judicial release, placed her on community control for five years, and imposed conditions for her release, including that she serve 120 days in the county jail as scheduled by the probation department, participate in counseling and substance-abuse rehabilitation and/or treatment, undergo random drug and/or alcohol urinalysis testing, and abstain from the use of alcohol and illegal substances. Goodman remains classified as a Tier II sex offender and must comply with all registration requirements for 25 years.

*Disciplinary Proceedings*

**{¶ 10}** On May 24, 2022, we suspended Goodman's license on an interim basis following her felony conviction, and that suspension remains in effect. *See In re Goodman*, 169 Ohio St.3d 1201, 2022-Ohio-1717, 201 N.E.3d 922.

**{¶ 11}** In a September 2022 complaint, disciplinary counsel charged Goodman with professional misconduct arising from her felony conviction. Goodman waived a probable-cause determination and, in her answer to relator's complaint, admitted all but one of the factual allegations and all the alleged rule violations. The parties jointly submitted stipulations of fact, misconduct, and aggravating and mitigating factors, and they jointly recommended that Goodman be indefinitely suspended from the practice of law with no credit for the time she has served under her interim felony suspension.

**{¶ 12}** At the disciplinary hearing, Goodman admitted committing the misconduct described in the stipulations that resulted in her conviction for unlawful sexual conduct with a minor and her classification as a Tier II sex offender. She testified that she met L.H.'s father in March 2018, moved in with him in late April

4

or early May, began engaging in sexual conduct with L.H. by the summer, and maintained a relationship with L.H.'s father for two years after L.H. reported the abuse.

**{¶ 13}** When asked how the sexual abuse began, Goodman explained: "I was initially told that the victim had entered the room on [her] own accord. I later found out that that's probably not what happened at all." Goodman said that she could not remember how many times she had engaged in sexual conduct with L.H., stating, "As part of the coping, I've blocked a lot of things out." She asserted that she told L.H's father to stop the abuse "[e]very single time," and she claimed that she said to L.H., " 'If you do not want this to happen, you need to tell me.' " Nonetheless, Goodman admitted that a 13-year-old child could not consent to sexual activity with her, and she stipulated that she told the victim not to tell anyone, because it would negatively impact her professionally. Goodman claimed that L.H.'s father had manipulated her into sexually abusing L.H., but she admitted, "[W]hat I did was wrong. I had a choice the whole time, and I still chose to do it."

**{¶ 14}** Goodman testified that she obtained psychological counseling before she went to prison and that she resumed weekly sessions after her release from prison. She claimed that as part of the drug, alcohol, and mental-health assessment conducted for her judicial release, she was diagnosed with adjustment disorder with anxiety and depression and with posttraumatic stress disorder arising from suppressed childhood trauma—though she has offered no other evidence to substantiate that testimony.

**{¶ 15}** Goodman asserted that she had been the victim of neglect and abuse, and she suggested that her past had left her susceptible to manipulation by L.H.'s father. According to Goodman, her father left home when she was three years old and nothing she ever did as a child was good enough for him. Unable to obtain his approval, she stated that she has striven to get the attention of a man to fill that void.

She has been twice married and divorced, and by her own account, she was mentally abused by one of her husbands and was physically abused by both of them.

**{¶ 16}** Goodman testified that she understands the damage that she did to the victim and that the victim would carry that damage throughout her life. When a panel member asked how she was living with herself after committing the offenses, Goodman answered, "Not very well," and stated that it is "a daily struggle" to do so.

**{¶ 17}** On this evidence, the panel and board found that Goodman's conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The board found that those violations had been proved by clear and convincing evidence and acknowledged that the Prof.Cond.R. 8.4(h) violation was predicated on the egregiousness of Goodman's conduct. *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

**{¶ 18}** We adopt the board's findings of misconduct.

## RECOMMENDED SANCTION

**{¶ 19}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 20}** The parties stipulated and the board found that four aggravating factors are present in this case: Goodman acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, and harmed a vulnerable victim. *See* Gov.Bar R. V(13)(B)(2), (3), (4), and (8). As for mitigating factors, the parties stipulated and the board agreed that Goodman had a clean disciplinary record, that she had made full and free disclosure to the board and

exhibited a cooperative attitude toward the disciplinary proceedings, and that other penalties or sanctions had been imposed for her misconduct. *See* Gov.Bar R. V(13)(C)(1), (4), and (6).

{¶ 21} The board also found as a mitigating factor evidence of Goodman's good character or reputation, citing the ten character letters that she had presented. *See* Gov.Bar R. V(13)(C)(5). Most of the letters were written by friends who generally described Goodman as caring, compassionate, loyal, hardworking, honest, and generous. However, although Goodman testified that the authors of these character letters were aware of the charge against her and of her guilty plea, none of them mentioned the crime of which she was convicted.

{¶ 22} In accord with the parties' proposed sanction, the board recommends that we indefinitely suspend Goodman from the practice of law with no credit for the time she has served under her interim felony suspension. In addition, the board recommends that notwithstanding the provisions of Gov.Bar R. V(25)(D)(2), Goodman not be permitted to petition for reinstatement to the practice of law until she has successfully completed the five-year term of community control imposed in her criminal case.

{¶ 23} In making this recommendation, the board primarily relied on *Disciplinary Counsel v. Wanner*, 15 Ohio St.3d 319, 473 N.E.2d 829 (1984), and *Disciplinary Counsel v. Pansiera*, 77 Ohio St.3d 436, 674 N.E.2d 1373 (1997), cases that the board viewed as involving attorneys who committed crimes similar to the offense Goodman was convicted of committing—unlawful sexual conduct with a minor. The attorney in *Wanner* had been convicted of a single count of sexual battery for engaging in sexual conduct with two 17-year-old girls who were under his supervisory and disciplinary authority in a group home. *Wanner* at 319. The attorney in *Pansiera* had been convicted of seven counts of corrupting a minor for engaging in sexual conduct with a child between the ages of 13 and 16 whom he had befriended in an Alcoholics Anonymous program. *Pansiera* at 437.

**{¶ 24}** However, in disciplining an attorney for misconduct that also constitutes a criminal offense, we are not limited to considering the charges brought for a particular crime; rather, we must also examine the conduct underlying the offense. We did this recently in *Disciplinary Counsel v. Romer*, 172 Ohio St.3d 680, 2023-Ohio-3099, 226 N.E.3d 959. In that case, the attorney had been convicted of one felony count of attempted corrupting another with drugs, but that conviction did not reflect that the attorney had also engaged in sexual activity with a child. *Id.* at ¶ 1, 6-8. In indefinitely suspending the attorney, we did not rely solely on the elements of the offense. Instead, our analysis focused on caselaw applicable to sexual misconduct involving an underage victim, and we imposed a sanction consistent with that precedent. *Id.* at ¶ 19-20.

**{¶ 25}** R.C. 2907.02 establishes the crime of rape, and R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The definition of "sexual conduct" includes cunnilingus and the insertion of any part of the body into the vaginal opening of another. R.C. 2907.01(A).

**{¶ 26}** We have stated that "it is nearly impossible to imagine the rape of a child without force involved," *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998), and we have noted "the coercion inherent in parental authority when a father sexually abuses his child," *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). " 'The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.' " *Id*. at 59, quoting *State v. Etheridge*, 319 N.C. 34, 47, 352 S.E.2d 673 (1987).

**{¶ 27}** As discussed above, the victim's statements to police demonstrate that her father compelled her to have sex with him and that he overcame her will with the minimal threat of force needed to commit the rape of a child. Those

statements also show that Goodman participated in the repeated rape of the child when the child was made to submit on multiple occasions to cunnilingus and vaginal penetration by Goodman.

{¶ 28} Goodman admitted at her disciplinary hearing that this sexual conduct was "probably not" of "[L.H.'s] own accord." That is a gross understatement. Goodman knew at the time of her misconduct that a 13-year-old child could not consent to sexual conduct with an adult, and according to L.H., Goodman saw her physically hurting during sex with the victim's father. Yet rather than report this abuse to the police, Goodman urged L.H. not to tell anyone about it, because it could get Goodman in trouble and ruin her career. And given these facts and the history of sexual abuse that L.H. endured, Goodman's claim that she told L.H. to tell her if she did not want to engage in sexual conduct—and the implication that L.H. never said "no"—strains credibility.

{¶ 29} Instead, Goodman could not have reasonably believed that her sexual conduct with a 13-year-old child was anything but forced on the victim. As in *Eskridge*, "we are confronted with a child being told to do something by an important figure of authority, and commanded not to tell anyone about it. In such a case, we find nothing unreasonable about a finding that the child's will was overcome," 38 Ohio St.3d at 59, 526 N.E.2d 304.

{¶ 30} Looking to the misconduct underlying Goodman's conviction shows that her actions were tantamount to rape. Goodman encouraged and perpetuated the sexual molestation committed by the victim's father, and at the very least, she was complicit in his crimes. But she was actually more than complicit—she actively engaged in the repeated rape of the child.

{¶ 31} For this reason, our precedent disbarring attorneys for rape and other forcible sex offenses provides the appropriate sanction in this case. *See Disciplinary Counsel v. Polizzi*, 165 Ohio St.3d 28, 2021-Ohio-1136, 175 N.E.3d 501, ¶ 3-5 (attorney disbarred for committing forcible gross sexual imposition in

addition to sexual battery); *Disciplinary Counsel v. Williams*, 130 Ohio St.3d 341, 2011-Ohio-5163, 958 N.E.2d 555, ¶ 4-5 (attorney disbarred for raping a 7-year-old child); *Disciplinary Counsel v. Ostheimer*, 72 Ohio St.3d 304, 305-306, 649 N.E.2d 1217 (1995) (attorney disbarred for committing attempted felonious sexual penetration by "deceiv[ing] and coerc[ing] his adopted daughter into submitting to his sexual demands for at least three years"); *see also Cincinnati Bar Assn. v. Lisner*, 65 Ohio St.2d 62, 62-63, 417 N.E.2d 1381 (1981) (attorney disbarred for committing gross sexual imposition and sexual imposition).

**{¶ 32}** Further, although Goodman admitted that she knew at the time of her misconduct that engaging in sexual activity with a child was wrong, we are not convinced that she has fully accepted responsibility for her misconduct. At her disciplinary hearing, Goodman portrayed herself as the victim of manipulation and lies but she failed to explain how that could possibly cause her to molest a child. Goodman also asserted that she could not remember certain details of the sexual abuse in which she engaged, testifying that her memory lapse was "part of a trauma response" to her own prior abuse that she says she had suffered and that "[a]s part of the coping, [she had] blocked a lot of things out." Yet she could clearly remember facts that minimized her misconduct, such as Goodman's claims that she told L.H. to let her know if the child did not want to engage in the abuse and that she told L.H.'s father that she did not want to molest the child. And while Goodman sought to attribute her misconduct to trauma that she says she had suffered as a child and as an adult, she did not produce supporting evidence to prove that her experiences could cause a partial memory loss or that the abuse she had suffered contributed to her misconduct.

**{¶ 33}** " '[Disbarment] is intended to protect the public, the courts and the legal profession. * * * [T]he moral character of an attorney is at all times to be scrutinized for the purpose of [e]nsuring that protection.' " *Disciplinary Counsel v. Lawson*, 130 Ohio St.3d 184, 2011-Ohio-4673, 956 N.E.2d 839, ¶ 34, quoting *In*

*re Disbarment of Lieberman*, 163 Ohio St. 35, 41, 125 N.E.2d 328 (1955). Goodman's participation in the repeated rape of a 13-year-old child demonstrates that she lacks the moral character necessary to practice law in this state, and in these circumstances, disbarment is the only sanction sufficient to protect the public from further misconduct.

## CONCLUSION

{¶ 34} For these reasons, Amber Renee Goodman is permanently disbarred from the practice of law in Ohio. Costs are taxed to Goodman.

Judgment accordingly.

FISCHER, DEWINE, and DETERS, JJ., concur.

DONNELLY, J., concurs, with an opinion.

STEWART, J., concurs in judgment only.

BRUNNER, J., not participating.

_____

**DONNELLY, J., concurring.**

{¶ 35} I join the majority's decision to impose a sanction more severe than that proposed by the Board of Professional Conduct and to permanently disbar Amber Renee Goodman from the practice of law in Ohio. I write separately, however, to express my concerns about the series of events that resulted in the majority's having to reject the board's proposed sanction here. In short, had the criminal-justice system properly held Goodman to account for the criminal acts she committed, then the board would have been able to recommend a more appropriate sanction, thereby making it unnecessary for this court to go further.

{¶ 36} When deciding what sanction to recommend to this court in attorney-discipline cases, the board looks to the sanctions previously imposed on similarly situated attorneys. Goodman stipulated to misconduct arising from her conviction for one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (B)(3). And so the board properly looked to those cases in

which this court had disciplined attorneys for unlawful sexual conduct with a minor and concluded that an indefinite suspension was the appropriate sanction here. Yet the majority correctly rejects the board's recommended sanction because an indefinite suspension does not adequately reflect the seriousness of Goodman's conduct, nor would it adequately protect the public. Majority opinion, ¶ 30-33. If the board did exactly what it is supposed to do, why the more severe sanction? The answer to that question lies with the criminal process that led to Goodman's conviction.

{¶ 37} In the record before us, Goodman has admitted that she engaged in sexual activities with a minor victim multiple times and over several months. She admitted that as part of those sexual activities, she touched the victim's genitals and breasts. And she admitted that she knew that a minor of the victim's age when the sexual activities began could not consent to sexual activity. The record also contains details of Goodman's sexual conduct, in the form of the victim's sworn statements to police. In those statements, the victim states that Goodman penetrated the victim's vagina with her fingers seven times and with her tongue seven times.

{¶ 38} As the majority opinion convincingly sets out, Goodman's conduct amounts to repeated acts of rape under R.C. 2907.02(A)(2). *See* majority opinion at ¶ 25-30. And I am sure that had prosecutors presented to a jury the evidence that is available to us, Goodman would have been convicted of rape. Yet in the criminal prosecution that lies at the root of this disciplinary case, the state charged Goodman by way of information with only a single count of unlawful sexual conduct with a minor under R.C. 2907.04(A) and (B)(3)—a charge to which Goodman pleaded guilty. R.C. 2907.04(A) prohibits a person who is 18 years of age or older from engaging in sexual conduct with another person when the offender knows that the other person is 13 years of age or older but less than 16 years of age or the offender is reckless in that regard. To be clear, that offense does not contain the elements of compulsion through force or the threat of force found in the offense of rape under

R.C. 2907.02(A)(2). Indeed, unlawful sexual conduct with a minor is not a lesser included offense of rape, because an offender can commit all the elements of rape under R.C. 2907.02(A)(2) without also committing all the elements of unlawful sexual conduct with a minor under R.C. 2907.04(A). *See State v. Shadoan*, 4th Dist. Adams No. 03CA764, 2004-Ohio-1756, ¶ 72 (noting that the offense of rape does not contain age as an element). Therefore, a jury could not have independently found Goodman guilty of unlawful sexual conduct with a minor if it had been asked to determine Goodman's culpability for rape.

**{¶ 39}** Based on the facts contained in this record, Goodman participated in the repeated rape of a 13-year-old child. But she has been found criminally liable only for engaging in sexual conduct with a victim who was 13 years of age or older but less than 16 years of age. In effect, the criminal-justice system failed to hold Goodman accountable by allowing her to plead guilty to a crime distinguishable from the crime she committed.

**{¶ 40}** Eight years ago, this court had the chance to prevent situations like Goodman's from occurring when the Commission on the Rules of Practice and Procedure proposed a new criminal rule requiring a felony charge in plea bargains to have a factual basis in the conduct defendants actually committed. *See* Ludlow, *State Supreme Court Rejects Truth-In-Sentencing Rule*, Columbus Dispatch (Jan. 25, 2016), available at https://www.dispatch.com/story/news/crime/2016/01/15 /state-supreme-court-rejects-truth/23850357007/ (accessed Feb. 14, 2024) [https://perma.cc/Y2BQ-PVD7]. But this court rejected the proposed rule change. *Id.* As a result, Goodman managed to plead guilty to a crime that does not come close to accounting for the vile acts she committed. And her plea, in turn, hindered the board's ability to properly assess the severity of her misconduct and to recommend the appropriate disciplinary sanction.

**{¶ 41}** In the end, this court's decision to permanently disbar Goodman is the correct one. Goodman raped a 13-year-old child, and for that she should be

permanently disbarred. *See* majority opinion at ¶ 31 (collecting cases in which this court disbarred attorneys for rape and other forcible sex offenses). But I worry that our decision to go beyond the board's recommended sanction, while necessary to protect the public, gives the impression that we are using this disciplinary proceeding to mete out the punishment Goodman should have received through the criminal process. Such appearances could have been avoided if Goodman had pleaded guilty to a crime commensurate with her conduct, thereby giving the board the information necessary for it to take appropriate action. I hope the circumstances of this case will inspire this court to revisit its rejection of a criminal rule requiring a felony charge in plea bargains to have a factual basis in the conduct defendants actually committed.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Audrey E. Varwig, Assistant Disciplinary Counsel, for relator.

Montgomery Jonson, L.L.P., and George D. Jonson, for respondent.

_____