**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Armengau*, **Slip Opinion No. 2026-Ohio-1230.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1230

COLUMBUS BAR ASSOCIATION *v.* ARMENGAU.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Armengau*, Slip Opinion No. 2026-Ohio-1230.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Respondent's objections to findings of misconduct made by Board of Professional Conduct, board's alleged failure to consider certain mitigating evidence, and its recommended sanction overruled—Permanent disbarment.*

(No. 2019-0500—Submitted January 7, 2026—Decided April 8, 2026.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-087.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, SUTTON, DETERS, EPLEY, and SHANAHAN, JJ.  BETTY S. SUTTON, J., of

the Ninth District Court of Appeals, sat for BRUNNER, J. CHRISTOPHER B. EPLEY, J., of the Second District Court of Appeals, sat for HAWKINS, J.

**Per Curiam.**

{¶ 1} Respondent, Javier Horacio Armengau, of Columbus, Ohio, Attorney Registration No. 0069776, was admitted to the practice of law in Ohio in 1998. In 2003, we publicly reprimanded Armengau for asserting his personal knowledge of the facts in issue during a criminal trial, engaging in conduct that was prejudicial to the administration of justice, and disregarding a ruling of a tribunal made in the course of judicial proceedings. *Disciplinary Counsel v. Armengau*, 2003-Ohio-2465. On July 8, 2014, we granted the motion of relator in this case, Columbus Bar Association, to suspend Armengau from the practice of law on an interim basis on the ground that he posed a substantial threat of serious harm to the public. *Columbus Bar Assn. v. Armengau*, 2014-Ohio-3023; *see* Gov.Bar R. V(19). We imposed a second interim suspension on September 15, 2014, based on Armengau's felony convictions on single counts of rape and kidnapping, two counts of gross sexual imposition, and four counts of sexual battery arising from acts he committed against three women in three separate incidents.[1] *See In re Armengau*, 2014-Ohio-3940; *see* Gov.Bar R. V(18). Those suspensions remain in effect.

{¶ 2} This case began with relator's December 2014 complaint, which included 14 counts alleging various ethical violations. Count One arose from Armengau's criminal convictions, and the remaining counts arose from his representation of multiple clients and his management of various aspects of his legal practice. Following a lengthy and complex procedural history, which is summarized below, the matter is now before this court on the October 3, 2025 report of the Board of Professional Conduct recommending that Armengau be

---

1. Armengau was also convicted of a misdemeanor count of public indecency. He was acquitted on nine additional counts involving two other women.

permanently disbarred for findings of professional misconduct that were based on his criminal convictions.

**{¶ 3}** Armengau objects to the board's findings of misconduct, its alleged failure to consider certain mitigating evidence, and its recommended sanction. He argues that he is morally, ethically, and professionally capable of resuming the practice of law.

**{¶ 4}** For the reasons that follow, we overrule each of Armengau's objections, adopt the board's findings of misconduct, and permanently disbar him from the practice of law in Ohio.

## I. PROCEDURAL HISTORY

### A. Relator's Complaint and the Underlying Criminal Proceedings

**{¶ 5}** When relator filed its December 2014 complaint, Armengau's direct appeal of his convictions and sentence was pending in the Tenth District Court of Appeals. Consequently, in January 2015, the board issued an order staying the disiciplinary proceedings "during the pendency of the direct appellate proceedings" relating to Armengau's convictions. *See* Gov.Bar R. V(18)(C) (requiring the board to defer any hearing in a pending disciplinary proceeding that is based on a criminal conviction "until all direct appeals from the conviction . . . are concluded").

**{¶ 6}** On June 22, 2017, the Tenth District affirmed the trial court's judgment in part, reversed it in part, and remanded the case to the trial court to resentence Armengau on four counts and to determine the proper sex-offender classification under the law in effect when he committed the offenses of which he was convicted. *State v. Armengau*, 2017-Ohio-4452, ¶ 136 (10th Dist.). We declined to accept a discretionary appeal from that judgment on January 31, 2018. 2018-Ohio-365.

**{¶ 7}** In March 2018, the trial court held a resentencing hearing, resentenced Armengau, and determined his sex-offender classification under the law in effect

at the time of his offenses. Armengau appealed that judgment. *See State v. Armengau*, 2020-Ohio-3552 (10th Dist.).

### B. The 2019 Disciplinary Proceedings and
### Armengau's Subsequent Criminal Appeals

{¶ 8} In August 2018, the panel chair granted the parties' joint motion to conduct a separate hearing on Count One of relator's complaint and to stay the proceedings with respect to Counts Two through Fourteen. On January 9, 2019, while Armengau's appeal of the resentencing judgment remained pending, a panel of the board conducted a hearing on Count One of relator's complaint, which was based solely on Armengau's criminal convictions. The panel later issued a report finding that Armengau's criminal conduct violated two professional-conduct rules: one that prohibits attorneys from committing illegal acts that adversely reflect on their honesty and trustworthiness, *see* Prof.Cond.R. 8.4(b), and another that prohibits attorneys from engaging in conduct that adversely reflects on their fitness to practice law, *see* Prof.Cond.R. 8.4(h). The panel recommended that Armengau be permanently disbarred for his misconduct. On April 8, 2019, the board issued a report adopting the findings of fact, conclusions of law, and recommendation of the panel.

{¶ 9} Armengau raised three objections to the board's 2019 report and recommendation. In April 2020, we sustained Armengau's first objection and held that because his appeal of the trial court's resentencing judgment in his criminal case was a direct appeal of his criminal convictions, the board should have stayed the disciplinary proceedings under Gov.Bar R. V(18)(C). *Columbus Bar Assn. v. Armengau*, 2020-Ohio-1421, ¶ 10-11. And after finding that Armengau's remaining objections were not ripe for review, we remanded the case to the board with instructions to stay the disciplinary proceedings until all direct appeals of his convictions had concluded. *Id*. at ¶ 15.

{¶ 10} On June 30, 2020, the Tenth District sustained Armengau's first assignment of error in part, found that the trial court had made an error in resentencing him with respect to a single count, and remanded the case for a second resentencing on that count. *State v. Armengau*, 2020-Ohio-3552, at ¶ 27 (10th Dist.). The court overruled two other assignments of error "because their resolutions are res judicata and . . . the law of the case" and affirmed the trial court's judgment in all other respects. *Id.* We declined to accept a discretionary appeal from the Tenth District's judgment on October 13, 2020. 2020-Ohio-4811.

{¶ 11} The record in this case shows that Armengau was initially sentenced to prison for 13 years for his criminal convictions. There is no evidence regarding the length of the sentence imposed following the second remand for resentencing. However, the record does establish that Armengau was released from prison on December 27, 2023, after serving nine and a half years in prison.

### C. The 2025 Disciplinary Proceedings

{¶ 12} In April 2025, after being informed that all of Armengau's direct appeals had concluded, the panel chair issued an order lifting the stay imposed in April 2020. In addition, the chair limited the scope of the proceedings on remand to Count One of relator's complaint, prohibited the parties from relitigating the board's 2019 findings of fact and conclusions of law, and authorized the parties to supplement the record with evidence only as to aggravating and mitigating factors and case authority issued after the board's 2019 report. Thereafter, the parties entered into stipulations of fact and filed them with the board.

{¶ 13} The matter was heard on July 18, 2025, before a three-member panel of the board. The panel heard Armengau's testimony and admitted seven stipulated exhibits introduced by both parties, one exhibit introduced by relator, and 18 exhibits introduced by Armengau.

{¶ 14} The panel later issued a report in which it incorporated the board's 2019 report by reference—including its determination that Armengau's criminal

convictions constituted illegal acts that reflect on his honesty and trustworthiness in violation of Prof.Cond.R. 8.4(b) and that those acts adversely reflect on his fitness to practice law in violation of Prof.Cond.R. 8.4(h). The board also made additional findings of fact with regard to the applicable aggravating and mitigating factors. After considering two precedents addressed by the parties in their respective posthearing briefs, the panel reaffirmed its 2019 recommendation that Armengau be permanently disbarred for his misconduct. The board adopted the report and recommendation of the panel and further recommended that Armengau be ordered to pay the costs of the disciplinary proceedings.

## II. THE BOARD'S FINDINGS OF FACT AND MISCONDUCT

{¶ 15} During Armengau's 2019 disciplinary hearing, relator argued that the certified copies, admitted into the record, of Armengau's convictions—for single counts of rape, kidnapping, and public indecency, two counts of gross sexual imposition, and four counts of sexual battery—constituted conclusive evidence of his commission of those offenses. Relator also contended that Armengau's commission of those criminal offenses was sufficient to prove that he violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 16} The board found that having been affirmed on appeal, Armengau's criminal convictions were conclusively established for the purposes of this disciplinary proceeding. The board also found that those convictions constituted clear and convincing evidence that Armengau committed illegal acts that adversely reflected on his trustworthiness in violation of Prof.Cond.R. 8.4(b). In addition, the board found that Armengau's convictions established by clear and convincing evidence that his conduct adversely reflected on his fitness to practice law in

violation of Prof.Cond.R. 8.4(h) and that his misconduct was sufficiently egregious to warrant finding a separate violation of that rule. *See Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21. Finding that the convictions alone were insufficient to establish that Armengau had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, the board unanimously dismissed the alleged violation of Prof.Cond.R. 8.4(c).

{¶ 17} Relator argued in its posthearing brief that a "particularly heinous aspect of [Armengau's] convictions is that his victims are individuals who were his employees, clients and client family members." The board noted, however, that the record was "uniquely sparse on facts identifying" the three victims of the crimes of which Armengau was convicted. While Armengau mentioned the three women by name in his testimony, the board noted that he did not identify the guilty verdicts or sentences that related to each of those victims. Believing that additional facts "are essential to understanding the nature of the relationship between Armengau and each of his victims," the board turned to the facts set forth in *State v. Armengau*, 2017-Ohio-4452 (10th Dist.), which both parties cited during the course of the disciplinary proceedings. We rely on that opinion in reciting the facts below.

{¶ 18} The board noted that the first woman, identified as C.C., hired Armengau to represent her adult son, who had been indicted for aggravated murder and other charges. *See id.* at ¶ 6, 15. Thus, the board determined that C.C. was neither an employee nor a client but, rather, a relative of a client. C.C. testified that during the course of an interview with Armengau at his Columbus office, Armengau retrieved a legal file and sat next to her, brushing up against her. *Id.* at ¶ 6. When the file fell to the floor, he gripped her left arm firmly and put his right arm down her shirt, pulling her bra away from her breasts. *Id.* Unable to move due to Armengau's physical restraint, C.C. attempted to readjust her clothing and realized that he had stood up, unzipped his pants, and placed his penis before her face. *Id.* Offended, C.C. quickly left Armengau's office and later reported the

incident to Columbus police. *Id.* at ¶ 6-8. The jury returned guilty verdicts on two counts arising from Armengau's conduct with C.C.: gross sexual imposition and a misdemeanor offense of public indecency. *Id*. at ¶ 49-50.

{¶ 19} Armengau represented the second victim, a woman identified as K.R., in a criminal matter. *Id*. at ¶ 28. K.R. testified that during a meeting with Armengau at his office, he offered her a drink, rubbed her shoulders, and began feeling her breasts. *Id*. She further stated that after she refused to have sex with Armengau, he began masturbating in front of her. *Id*. With respect to Armengau's conduct with K.R., the jury returned a guilty verdict on one count of gross sexual imposition. *Id*. at ¶ 50.

{¶ 20} The third victim, a Venezuelan immigrant identified as L.M., hired Armengau to represent her in divorce proceedings and to advise her on immigration issues, though Armengau eventually hired her to perform office work to assist in paying her legal bills. *Id*., 2017-Ohio-4452, at ¶ 31, 34 (10th Dist.). The court of appeals' opinion—but not the board's report—states that L.M. testified about a 1999 incident during a meeting with Armengau in which Armengau suddenly approached her, pulled down his pants, and "threatened a poor result in her legal matters if she did not perform oral sex." *Id*. at ¶ 33. The court of appeals summarized her testimony as stating that he "placed his hands behind her head, thereby 'restraining [her] head against his penis,' told her to 'do it,' and forced his penis into her mouth." (Bracketed text in original.) *Id*.

{¶ 21} The board noted that L.M. also testified that "after that incident, sexual contact between [Armengau] and L.M. was frequent over approximately the next three years, always under the implied threat that if he dropped her case she would lose her immigration status and custody of her daughter," *id*. at ¶ 34. With respect to Armengau's conduct with L.M., the jury returned guilty verdicts on six counts: rape (Count Ten), kidnapping (Count 14), and sexual battery (Counts 15 through 18). *Id.* at ¶ 48.

### III. AGGRAVATING AND MITIGATING FACTORS FOUND BY THE BOARD

**{¶ 22}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 23}** In its 2019 report, the board found that five aggravating factors are present in this case: (1) Armengau's prior discipline, (2) his dishonest or selfish motive, (3) his pattern of misconduct, (4) his multiple offenses, and (5) the vulnerability of and harm caused to two victims who were his clients. *See* Gov.Bar R. V(13)(B)(1) through (4) and (8). The board expressly declined to adopt two additional aggravating factors advanced by relator: Armengau's alleged submission of false statements and his alleged refusal to acknowledge the wrongful nature of his conduct, the latter based on his longstanding position that he is innocent of the underlying criminal offenses. *See* Gov.Bar R. V(13)(B)(6) and (7). The board explained that while "our criminal justice system [is] the best system anywhere, [it] is nevertheless imperfect." The board therefore "decline[d] to strip [Armengau] of *his belief* in his innocence and his right to stand on that belief in this proceeding without adverse impact." (Emphasis in original.)

**{¶ 24}** In its 2019 report, the board also found that three mitigating factors are present. First, the board credited Armengau's testimony that he was working to make restitution to any former clients found to have been harmed by his inability to continue his representation following his interim suspensions and subsequent incarceration. *See* Gov.Bar R. V(13)(C)(3). Second, the board acknowledged that four witnesses—an attorney, a paralegal who had worked for Armengau, and two former clients—had credibly and sincerely provided testimony that favorably described his character, diligence as a defense counsel, and dedication to the practice of law. *See* Gov.Bar R. V(13)(C)(5). While giving "mitigating credence

to the version of [Armengau] described by those witnesses," the board determined that it was required to "hold supreme [his] conclusively established [criminal] convictions." And third, the board found that another penalty has been imposed on Armengau in the form of his criminal sentence. *See* Gov.Bar R. V(13)(C)(6).

{¶ 25} In its 2025 report, the board noted the aggravating and mitigating factors it found in 2019. In addition, the board found that the Lawyers' Fund for Client Protection had reimbursed Armengau's former clients a total of $28,200 by the time of the July 18, 2025 hearing in this matter, that he had reimbursed the fund approximately $3,335, and that he continues to make reimbursements to the fund as he is able. Armengau testified that while in prison, he helped other inmates obtain visitation or phone privileges with their minor children, make plans for parole, prepare for the GED test, write letters to family members, learn Spanish, and learn to perform legal research. And following his release, Armengau provided thoughtful human services to drug-dependent people—connecting them with resources, giving them food, and helping them arrange transportation to court appearances—all without compensation. The board commended those actions and accorded mitigating effect to them. *See* Gov.Bar R. V(13)(A) (directing the board to consider "all relevant factors" in determining the appropriate sanction to recommend for an attorney's misconduct).

## IV. THE BOARD'S RECOMMENDED SANCTION

{¶ 26} In its 2019 report, the board recommended that Armengau be permanently disbarred from the practice of law. To support its recommendation, the board relied primarily on *Disciplinary Counsel v. Williams*, 2011-Ohio-5163 (permanently disbarring an attorney who was convicted of rape and kidnapping with a sexual motivation, both of which involved his seven-year-old nephew).

{¶ 27} Following Armengau's 2025 disciplinary hearing, the board considered two cases that were decided by this court after the board issued its 2019 report and that the parties discussed in their posthearing briefs: *Disciplinary*

*Counsel v. Goodman*, 2024-Ohio-852 (permanently disbarring an attorney who actively engaged in the repeated rape of her sexual partner's 13-year-old daughter), and *Disciplinary Counsel v. Polizzi*, 2021-Ohio-1136 (permanently disbarring an attorney convicted on multiple counts of gross sexual imposition and sexual battery involving two minors that were committed during his tenure as a teacher at the victims' school prior to his admission to the bar).

{¶ 28} The board noted that the nine criminal counts on which Armengau was convicted involve three victims. Specifically, the board observed, Armengau was convicted on the following counts: one count of gross sexual imposition and one count of public indecency committed against C.C., the mother of a client; one count of gross sexual imposition committed against another client, K.R.; and one count of rape, one count of kidnapping, and four counts of sexual battery committed against L.M., a vulnerable immigration client who also worked in Armengau's office to help pay her legal bills.

{¶ 29} While the board acknowledged that Armengau's conduct during and after his imprisonment showed that he could be redeemed as a person and be a productive member of society, it suggested that we cannot protect the public and ensure public trust in the profession if we allow a convicted rapist to resume the practice of law. Therefore, the board concluded that Armengau's criminal convictions indicate that he is not redeemable as an attorney, and it reaffirmed its 2019 recommendation that he be permanently disbarred.

## V. ARMENGAU'S OBJECTIONS TO THE BOARD'S REPORT AND RECOMMENDATION

{¶ 30} Armengau raises four objections to the board's report and recommendation. First, Armengau objects to the board's recommended sanction of permanent disbarment. Second, he objects to his criminal convictions serving as evidence of his alleged professional misconduct under the facts of this case. Third, he objects to the refusal of the panel and board to consider certain mitigating

evidence admitted into the record during his 2025 disciplinary hearing. And as his fourth and final objection, Armengau contends that he is morally, ethically, and professionally capable of serving as an attorney and counselor at law. We begin our analysis with Armengau's second objection.

### A. The Board Properly Considered Armengau's Criminal Convictions as Evidence of Professional Misconduct

{¶ 31} In support of his second objection to the board's report and recommendation, Armengau maintains that he is actually innocent and has been wrongfully convicted of the sex offenses that form the basis of this disciplinary proceeding. He therefore objects to the board's and this court's consideration of his criminal convictions as evidence that he engaged in the professional misconduct at issue in this case.

{¶ 32} In support of this objection, Armengau cites his Exhibit A, a letter from attorney Joseph R. Landusky II that was admitted into evidence during Armengau's 2025 disciplinary hearing. In that letter, Landusky states that he is "disappointed and discouraged" by the appellate review of Armengau's case and opines that "well-established precedent mandated reversal of [Armengau's] convictions." Expressing his belief that Armengau has been wrongfully convicted, Landusky states that it is his hope—and the hope of unidentified others who have followed Armengau's case—that this court "will not consider the 'convictions' in determining any sanction to be imposed" on Armengau in this disciplinary case.

{¶ 33} Armengau asserts that Landusky's letter "reflects the common knowledge, if not the consensus, amongst those who would be working with and interacting with [Armengau], should he be readmitted to practice." He urges us to review the Tenth District's decision in his first direct appeal, consider the results of a polygraph examination that he introduced into evidence at his 2025 disciplinary hearing, and disregard the evidence of his criminal convictions in this disciplinary proceeding.

12

{¶ 34} Certified copies of an August 28, 2014 judgment entry and a March 28, 2018 amended entry setting forth Armengau's convictions on single counts of rape and kidnapping, two counts of gross sexual imposition, and four counts of sexual battery—all felony offenses of various degrees—were admitted into evidence during his 2019 disciplinary hearing.

{¶ 35} "A certified copy of the entry of conviction of an offense . . . shall be conclusive evidence of the commission of that offense . . . in any disciplinary proceedings instituted against a judicial officer or an attorney based upon the conviction . . . ." Gov.Bar R. V(18)(B). "Consequently, we have held that 'a disciplinary proceeding is not an appropriate forum in which to collaterally attack a criminal conviction.'" *Disciplinary Counsel v. Hunter*, 2023-Ohio-4168, ¶ 24, quoting *Greater Cleveland Bar Assn. v. Chvosta*, 62 Ohio St.2d 429, 430 (1980).

{¶ 36} Indeed, in *State v. Szefcyk*, 1996-Ohio-337, we held:

> Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*Id.* at syllabus, citing *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. We stated that our holding underscored the importance of the finality of judgments of conviction and, quoting the United States Supreme Court, we emphasized that "'"[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties."'"

*Id.* at ¶ 11, quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981), quoting *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525 (1931).

{¶ 37} Accordingly, in *Disciplinary Counsel v. McAuliffe*, a municipal-court judge was charged with ethical violations arising from his federal convictions on various counts of mail fraud and money laundering after he burned down his house to defraud an insurance company. 2009-Ohio-1151, ¶ 1-2. We held that the judgment entries reflecting McAuliffe's convictions constituted conclusive evidence that he had committed the federal crimes in question—even as he continued to deny having committed the crimes. *Id.* at ¶ 23. Finding that those crimes violated four disciplinary rules of the former Code of Professional Responsibility and two canons of the Code of Judicial Conduct, *id.* at ¶ 22, we permanently disbarred McAuliffe from the practice of law, *id.* at ¶ 30.

{¶ 38} Notwithstanding Armengau's profession of innocence, the above authorities are controlling here. Relator has conclusively established Armengau's convictions following a trial by jury for rape, kidnapping, gross sexual imposition, and sexual battery, and he is prohibited from challenging those convictions in this disciplinary proceeding—even as he continues to deny having committed those crimes. Moreover, Armengau's convictions are conclusive evidence that he committed illegal acts that adversely reflect on his trustworthiness in violation of Prof.Cond.R. 8.4(b), that his conduct adversely reflected on his fitness to practice law in violation of Prof.Cond.R. 8.4(h), and that his conduct was sufficiently egregious to warrant finding a separate violation of Prof.Cond.R. 8.4(h). *See Bricker*, 2013-Ohio-3998, at ¶ 21. We therefore overrule Armengau's second objection and adopt the board's findings that his criminal conduct violated Prof.Cond.R. 8.4(b) and (h).

### B. *The Board Did Not Err in Rejecting Additional Mitigating Factors Advanced by Armengau*

**{¶ 39}** As his third objection to the board's report and recommendation, Armengau argues that the board refused to consider significant mitigating evidence he introduced at his 2025 disciplinary hearing, including letters of support from distinguished members of the bar, evidence of his cooperation in these disciplinary proceedings, and the results of an August 2024 polygraph examination.

**{¶ 40}** We acknowledge that Armengau submitted 13 character letters during his 2025 disciplinary hearing—ten of which were authored by members of the Ohio bar, one by a former client, one by the mother of a former client, and one by the father of an inmate whom Armengau helped while in prison.

**{¶ 41}** Much like the four witnesses who testified at Armengau's 2019 hearing, the authors of the recent letters generally describe Armengau as a highly competent, diligent, and tenacious attorney who was committed to his clients. Several of those letters address Armengau's character, reputation, integrity, and trustworthiness—with some authors stating that they would use his services or refer others to him if we permitted him to resume the practice of law. Although the board did not mention Armengau's additional character evidence in its 2025 report, it did incorporate its 2019 report by reference and that report expressly attributes mitigating effect to Armengau's earlier character evidence. We find that Armengau's additional character evidence is insufficient to overcome the evidence of his criminal convictions for various sex offenses committed against two of his legal clients and a family member of a third client.

**{¶ 42}** We acknowledge that the record shows that Armengau generally cooperated in these disciplinary proceedings since they commenced in 2014. He answered the complaint, participated in prehearing conferences, filed a joint motion and a joint agreement with relator, stipulated to facts and exhibits, accepted service

of a hearing notice by email, and actively participated in the two hearings held in this matter.

{¶ 43} But Armengau did not *fully* cooperate in the disciplinary proceedings. He was well aware that the panel chair had issued an order prohibiting the parties from relitigating the findings of fact and conclusions of law set forth in the board's 2019 report. Nevertheless, Armengau persisted in submitting evidence and argument intended to collaterally attack the criminal convictions underlying the board's findings of misconduct—including the purported results of an August 2024 polygraph exam. The board reasonably could have concluded that Armengau's refusal to obey the panel chair's order overshadowed his cooperation in the disciplinary proceedings.

{¶ 44} Moreover, "[a]s a general rule, polygraph evidence is not admissible at trial absent a stipulation of the parties." *Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 85 (1990), citing *State v. Souel*, 53 Ohio St.2d 123 (1978) (setting forth the prerequisites for the admission of a polygraph exam at a criminal trial), and *Brown v. Best Prods.*, 18 Ohio St.3d 32 (1985) (applying *Souel* to a civil proceeding); *see also Toledo Bar Assn. v. Westmeyer*, 58 Ohio St.3d 38, 39-40 (1991) (applying *Souel* to an attorney-discipline proceeding). Because relator did not stipulate to the admissibility of Armengau's polygraph exam, the board was under no obligation to admit it into evidence in this case.

{¶ 45} On these facts, we cannot find that the board erred in failing to afford mitigating effect to Armengau's additional character evidence, his cooperation in the disciplinary proceedings, or his polygraph results. We therefore overrule Armengau's third objection.

### C. Permanent Disbarment Is the Appropriate Sanction for Armengau's Misconduct

{¶ 46} As his first objection to the board's report and recommendation, Armengau challenges the board's recommended sanction of permanent disbarment,

and as his fourth objection, he asserts that he is morally, ethically, and professionally capable of serving as an attorney and counselor at law. In support of his first objection, he attempts to distinguish the facts of this case from two of the cases considered by the board in its 2025 report: *Goodman*, 2024-Ohio-852, and *Polizzi*, 2021-Ohio-1136.

**{¶ 47}** Armengau argues that the attorneys in *Goodman* and *Polizzi* both preyed on children and actually committed the crimes of which they were convicted. In contrast, he notes, Armengau was convicted of offenses involving two adult women who were clients of his legal practice and one woman who was a family member of a client. Armengau has steadfastly maintained that he is innocent of those crimes and claims that he "has never assaulted any woman, at any time."

**{¶ 48}** Goodman pleaded guilty to a single count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (B)(3), a third-degree felony, arising from her sexual abuse of the 13-year-old daughter of a man with whom Goodman was in a sexual relationship. *Goodman* at ¶ 8. She also waived a probable-cause determination and, in her answer to the relator's complaint, admitted all but one of the factual allegations and admitted that her conduct violated Prof.Cond.R. 8.4(b) and 8.4(h)—the same rule violations at issue in this case. *See id*. at ¶ 11, 17. We found that in Goodman's criminal case, the evidence (including the victim's statements to police) demonstrated that Goodman had actively participated in the repeated rape of the child. And we found that the sex crimes that Goodman herself committed—which included multiple acts of cunnilingus and digital penetration of the child—were "tantamount to rape." *Id*. at ¶ 30.

**{¶ 49}** Like Armengau, Goodman acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, and harmed a vulnerable victim. *See id*., 2024-Ohio-852, at ¶ 20. In mitigation, Goodman had a clean disciplinary record, made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, submitted evidence of

her good character and reputation, and had criminal sanctions imposed for her misconduct. *Id*. at ¶ 20-21. Although the board had recommended that Goodman be indefinitely suspended from the practice of law, we determined that her participation in the repeated rape of a 13-year-old child demonstrated that "she lack[ed] the moral character necessary to practice law in this state" and that "disbarment [was] the only sanction sufficient to protect the public from further misconduct." *Id*. at ¶ 33.

{¶ 50} Polizzi was charged with numerous counts of gross sexual imposition and sexual battery arising from his inappropriate sexual relationships with two students during his tenure as a teacher and coach at their school—all of which predated his admission to the Ohio bar. *Polizzi*, 2021-Ohio-1136, at ¶ 1, 4. We found that "for more than two years, Polizzi used his authority as a teacher to compel two of his students to engage in sexual conduct with him and threatened at least one victim with discipline or expulsion to keep her from reporting his conduct." *Id*. at ¶ 31.

{¶ 51} Polizzi pleaded guilty to one count of gross sexual imposition and three counts of sexual battery with respect to each of his victims. *Id*. at ¶ 4-5, 8. We found that by pleading guilty to the two counts of gross sexual imposition, Polizzi "admitted that he had used force or the threat of force to compel both victims to submit to his sexual demands." *Id*. at ¶ 31. Polizzi was sentenced to an aggregate term of 358 months (29 years and 10 months) in prison for his crimes. *Id*. at ¶ 7. The evidence presented during Polizzi's disciplinary hearing showed that even after his criminal conduct ended, he continued to abuse his victims by engaging in inappropriate—and, in one instance, obscene—communications with them. *Id*. at ¶ 11-13, 19. Polizzi stipulated that his criminal conduct violated Prof.Cond.R. 8.4(b) and (h). *Id*. at ¶ 15.

{¶ 52} Four of the five aggravating factors present in this case were also present in *Polizzi*. Though, unlike Armengau, Polizzi lacked a history of prior

discipline, we found as an additional aggravating factor that Polizzi had failed to accept responsibility for his misconduct. *See id*. at ¶ 17. Mitigating factors consisted of Polizzi's clean disciplinary record, his cooperation in the disciplinary proceedings, and the other sanctions imposed for his misconduct in the form of his criminal convictions and sentence and the loss of his teaching license. *Id*.

**{¶ 53}** In his objections, Armengau notes that we have indefinitely suspended at least two attorneys who, like Polizzi, were convicted of crimes for engaging in sexual conduct with teenage girls. *See Disciplinary Counsel v. Wanner*, 15 Ohio St.3d 319 (1984) (indefinitely suspending attorney who twice engaged in sexual conduct with two 17-year-old girls who were under his supervisory and disciplinary authority in group home where he was employed); *Disciplinary Counsel v. Pansiera*, 1997-Ohio-93 (indefinitely suspending attorney convicted of seven counts of corrupting a minor between the ages of 13 and 16 whom he had befriended in Alcoholics Anonymous program).

**{¶ 54}** In *Polizzi*, we found, "The most significant distinction between cases involving sexual misconduct that resulted in an indefinite suspension and those that resulted in permanent disbarment is that—like Polizzi—the attorneys who were disbarred were either convicted of gross sexual imposition or used force, the threat of force, or extreme forms of coercion to compel their victims to submit to their sexual demands." 2021-Ohio-1136, at ¶ 30. We ultimately determined that it was necessary to permanently disbar Polizzi to protect the public, to preserve the integrity of the legal profession, and to maintain public confidence in the profession as a whole. *Id*. at ¶ 34.

**{¶ 55}** In this case, Armengau has been convicted of nine felony sex offenses, each of which involve the use of force, threat of force, or coercion. *See* R.C. 2907.05(A) (defining gross sexual imposition); R.C. 2907.02(A) (defining rape); R.C. 2907.03(A) (defining sexual battery). Despite Armengau's declarations that he is innocent of those offenses, his convictions have been affirmed on appeal.

Those convictions are final and constitute conclusive evidence that Armengau committed the crimes. Although Armengau did not commit crimes against children as Goodman and Polizzi did, his crimes arose from his practice of law and victimized those who had sought his professional help.

{¶ 56} Despite those convictions, Armengau asserts as his fourth objection that he is morally, ethically, and professionally capable of serving as an attorney and counselor at law. He contends that he neither is now nor ever has been a threat to the public. In support of this objection, Armengau states that he has been "around women daily" since his release from prison in December 2023 and that "there hasn't been a single claim of impropriety, not even of an improper comment." Armengau further asserts that the three victims of the crimes of which he was convicted "all continued to have frequent contact with [him] *after* supposedly being assaulted." (Emphasis in original.) Although he alleges specific facts regarding his alleged post-assault contacts with one of the victims, those alleged facts are not in the record of this case. In fact, during Armengau's 2025 disciplinary hearing, the panel chair sustained relator's objection to one of the exhibits Armengau cites—Exhibit O—and expressly excluded it from the record. And while Armengau claims that the character evidence he presented at that hearing reflects "the overwhelming majority of individuals' opinions of [his] commitment, professionalism and to an extent, ability as a litigator," we note that he submitted just 13 letters, which can hardly be considered to express the opinion of a majority of Ohioans—attorneys or otherwise.

{¶ 57} While Armengau has presented some evidence indicating that he was a competent and diligent litigator, his multiple convictions for various felony sex offenses—committed against two clients and a family member of a third client—raise significant concerns regarding Armengau's trustworthiness and moral qualifications to practice law. Given the nature and extent of those violent and predatory crimes, the victims of which had sought his legal services, Armengau's

ability to engage in appropriate conduct with *some* women following his release from prison offers little assurance that the public—or his clients—would be safe if he were permitted to resume the practice of law.

**{¶ 58}** We acknowledge that Armengau has served the sentence imposed for his crimes and that by all accounts presented here, he has become a productive member of society. After considering his misconduct, the aggravating and mitigating factors, and our applicable precedent, however, we conclude that permanent disbarment is necessary to protect the public, to preserve the integrity of the legal profession, and to maintain public confidence in the profession as a whole. We therefore overrule Armengau's first and fourth objections to the board's report and recommendation.

## VI. CONCLUSION

**{¶ 59}** Based on the foregoing, we overrule Armengau's objections to the board's report and recommendation, adopt the board's findings of misconduct, and permanently disbar Armengau from the practice of law in Ohio. Because we have permanently disbarred Armengau, we sua sponte dismiss Counts Two through Fourteen of relator's complaint as moot. Costs are taxed to Armengau.

Judgment accordingly.

_____

Isaac Wiles Burkholder & Miller, L.L.C., and Michael S. Loughry; Amy Lynn Bostic; and Kent R. Markus, Bar Counsel, and Holly N. Wolf, Deputy Bar Counsel, for relator.

Javier Horacio Armengau, pro se.

_____